## ISAAC J. YOUNG *vs.* RICHARD D. LATHROP.

Where a fraudulent grantee of land conveyed it to a *bona fide* purchaser for value without notice of the fraud, after a creditor of the fraudulent grantor had obtained a judgment against him, but before the land was sold under an execution issued on such judgment and tested of the term where it was obtained, *it was held,* (Boyden J. dissenting,) that, by force of the proviso contained in the 4th section of the 50th ch. of the Rev. Code, (13 Eliz., ch. 5, sec. 6,) the title of the *bona fide* purchaser from the fraudulent grantee was to be preferred to that of the purchaser under the execution of the creditor of the fraudulent grantor.

[*Hoke* v. *Henderson,* 3 Dev. 12, and *Frost* v. *Etheridge,* 1 Dev. 30, cited and approved.]

This was a civil action brought in the Superior Court of GRANVILLE county for the recovery of a tract of land, and for damages for the detention of it.

The answer denied the ownership of the plaintiff and claimed that the title as well as the possession was in the defendant. By an order of the Court the case was referred to the Hon. William H. Battle, as a referee, to decide upon the issues of fact and law made by the pleadings. At the August Term, 1871, the referee made the following report:

This action having been referred to me by an order dated the —— day of July, 1871, to hear and decide all the issues therein, I respectfully report, that on the 1st day of August, 1871, the same was duly brought to trial before me at the office of George Badger Harris, Esq., in the town of Henderson, counsel for both parties attending, and evidence received, and thereupon I find the following facts:

1. That on the 27th day of November, 1865, one William H. Hughes was the owner in fee simple of the land, with the improvements thereon, mentioned in the pleadings, and being in possession of the same conveyed it by a deed proper in point of form to his brother Thomas C. Hughes and his heirs; that the consideration recited therein was the sum of five

thousand dollars, alleged to have been paid by the said grantee to the said grantor; that at the time of the execution of the said deed the said grantor was indebted to various creditors, in amounts much larger than the value of his property, and that he was utterly insolvent; that no part of the said consideration of five thousand dollars was paid, or was intended to be paid by the said grantee to the said grantor, and that the said deed was executed solely for the purpose of saving the land therein mentioned for the benefit of the grantor's family, at the expense of his creditors, by preventing its being applied to the payment of their debts; that this deed was duly proved and registered.

2. That at the June Term, 1866, of the Circuit Court of the United States for the fourth Circuit in the District of North Carolina, H. B. Loney & Co., citizens and residents of the city of Baltimore and State of Maryland, obtained a judgment against the said William H. Hughes, a citizen and resident of the State of North Carolina, for the sum of $1,960.12, due 28th December, 1865, subject to a credit of $100, paid 28th Jan., 1866, and for costs, also for three per cent. additional damages on the principal sum, which said judgment was obtained on a bill of exchange drawn at Baltimore on the 28th day of October, 1865, and payable sixty days after date and accepted by the said William H. Hughes.

3. That upon the said a judgment writ of *fieri facias* was duly issued from the said Court on the 18th July, 1866, tested of the said June Term, 1866, and returnable to the ensuing November Term thereof, which said writ was returned by the Marshal of the United States for the District of North Carolina, to whom it had been directed, with an endorsement that on the 9th day of November, 1866, it was levied upon the land mentioned in the present pleadings; and thereupon a writ of *venditioni exponas* was issued from the said Court on the 29th December, 1866, directed to the said Marshal, and commanding him to sell the said land, which said writ was

made returnable to the June Term of the said Court 1867, that by virtue of the said writ, the said Marshal duly exposed the said land for sale at auction, when it was bid off by Joseph B. Batchelor Esq., for the sum of sixteen dollars, of which a due return was made by the said Marshal; that this sale was made the 6th May, 1867, the said Batchelor bidding for his clients the plaintiffs in the judgment, and that with their consent, he, on the 20th day of January, 1869, transferred in writing his bid to the present plaintiff, Isaac J. Young, to whom the said Marshal, on the said 20th day of January, 1869, executed a deed which was afterwards duly proved and registered.

4. That on the 24th day of October, 1866, the said Thomas C. Hughes, the grantee, as hereinbefore stated, of the said William H. Hughes, by a deed duly executed, reciting a consideration of seven thousand dollars, conveyed to the defendant, Richard D. Lathrop, of the city and State of New York, and his heirs, the same land, which deed was duly stamped, proved and registered; and on the same day the said William H. Hughes executed to the said Richard D. Lathrop and his heirs a quit claim deed for the same land, which has not been either stamped or proved and registered. That at the time when the said deeds were executed, the firm of Lathrop, Luddington & Co., of which the said Richard D. Lathrop was a member, had claims against the said William H. Hughes amounting to $9,998, for which the said Thomas C. Hughes, and also George B. Hughes and George Badger Harris, were bound as sureties; and the said deed from the said Thomas C. Hughes to the said Richard H. Lathrop was given in part payment of the said claims, with the interest due thereon. Whether the said deed from Thomas C. Hughes to Richard D. Lathrop was executed *bona fide*, and without any notice, to the grantee, of the judgment against the said William H. Hughes in the Federal Court as hereinbefore mentioned, and also without notice of the alleged fraudulent conveyance from William H. Hughes to his brother Thomas C. Hughes, hereinbefore men-

tioned; and also whether the said deed was intended to be absolute or only a mortgage, are matters in which the testimony is conflicting.   *   *   *   *   After a careful consideration of all the testimony I find the facts to be, that the defendant was a *bona fide* purchaser of the land in question for a valuable consideration, without notice of the aforesaid judgment in the Federal Court, and of the fraud in the execution of the said deed from William C. Hughes to his brother Thomas C. Hughes. I further find that the deed from Thomas C. Hughes to the defendant, Lathrop, was an absolute one to him and his heirs, and was not, nor was it intended to be, a mortgage.

5. That the evidences of debt, which formed the consideration of the deed of the said Thomas C. Hughes to the defendant, were founded on a legal consideration, and were sufficient for the purposes of the said conveyance from the said Thomas C. Hughes to the defendant, provided the said Thomas C. Hughes had, as against the creditors of the said William H. Hughes, the right to make the conveyance, I find, as conclusions of law:

1. That the deed from the said William H. Hughes to the said Thomas C. Hughes, mentioned in my finding of the facts, was and is a fraud upon the creditors of the said grantor, and is, therefore, null and void as to them.

2. That the land mentioned in the said deed of conveyance, notwithstanding the formal execution of the same, remained, as to the creditors of the said William H. Hughes, his property, and that the writ of *fieri facias* which was issued on the judgment of F. B. Loney & Co., obtained at the June Term, 1866, of the Circuit Court of the United States for the District of North Carolina, which said writ was tested of the said term and was levied on the said land, was a lien on the same from the date of its teste, and the purchaser of the said land at the sale made by the Marshal, under the *venditioni exponas* issued from the November term of the said Court, obtained thereby a good title to the same.

3. That the attorney of the plaintiffs, in the said judgment, who bid off the land for them, had the right, with their consent, to transfer his bid to the plaintiff in the present action, and the deed from the Marshal to him gives him a good title to the said land. And I therefore direct judgment to be entered for the plaintiff.

1. That he recover the land mentioned in the pleadings.

I direct, further:

2. That judgment be entered for the plaintiff, that he recover, as damages for the detention of the said land, at the rate of two hundred dollars *per annum* during the time of such detention, making the sum of $850.

WILLIAM H. BATTLE, *Referee.*

Upon the return of this report, the defendant, by M. V. Lanier, Esq., his attorney, filed the following exceptions, to wit:

The defendant excepts to the report of the referee, returned to the present term of the Court, for error in his conclusions of law upon the facts found by him as set forth in his report, in the following particulars, to wit:

1. That the said referee concludes that, notwithstanding the deed from William H. Hughes to Thomas C. Hughes, the land remained the property of William H. Hughes as to the creditors of the latter, whereas he ought to have concluded that said deed was good as between the said parties, and voidable by and as to the creditors of the said William H. Hughes, and that as to said Richard D. Lathrop, the *bona fide* purchaser for value without notice, said deed was good as against the creditors of said William H. Hughes.

2. That the said referee concludes that the writ of *fieri facias* of Loney & Co. was a lien on the land from the date of its teste, whereas he ought to have concluded that the same was not a lien as against the said purchaser from Thomas C. Hughes, or, if a lien, it did not affect the said Richard D. Lathrop purchasing as aforesaid.

3. That the said referee further concludes that the purchaser

of the said land, at the sale by the Marshal, in said report mentioned, obtained a good title thereby to the said land, whereas he ought to have concluded that the said purchaser did not thereby get a good title as against the said R. D. Lathrop.

4. That the said referee further concludes that the attorney of the plaintiff in the judgment had the right to transfer his bid to the plaintiff in the present action, and that the deed from the Marshal to him gives him a good title, whereas he ought to have concluded that the said attorney had no such right at the time when the said transfer was made, and the said transfer was void, and that the deed of the said Marshal did not give the present plaintiff a good title.

5. That the said referee ought to have concluded, that in law, upon the facts stated in his said report, the said R. D. Lathrop, by his deed from the said Thomas C. Hughes, obtained a good title to the said land, and that the plaintiff in the present action is not entitled to recover.

Wherefore, and for divers other errors in law appearing in said report, the said defendant doth except to the same, and moves the Court to review said report and modify the same in respect of the error aforesaid, and to give judgment thereupon in favor of the defendant.

M. V. LANIER, Atto. for Def't.

Upon hearing and consideration of the exceptions to the report of the referee, his Honor, Judge Watts, overruled them, and then, upon the motion of the plaintiff's counsel, confirmed the said report and gave judgment, as therein directed, for the plaintiff, from which the defendant prayed and obtained an appeal to the Supreme Court.

*W. H. Young* and *Batchelor*, for the plaintiff.
*Lanier*, for the defendant.

PEARSON, C. J. The point is this. A debtor makes a volun-

tary deed of land for the benefit of himself, with an intent to defraud his creditors. Afterwards a creditor takes out execution upon a judgment against the debtor for a pre-existing debt and puts it into the hands of the Marshal. Afterwards the fraudulent grantee, for a valuable consideration and a full price, makes a *bona fide* sale, and executes a deed to the defendant for the land, the defendant having no notice of the fraud and covin between the debtor and the grantee. This sale and deed were *subsequent to the teste* of the *execution*. Afterwards the Marshal sells under the execution, and the plaintiff becomes the purchaser and takes the deed of the Marshal. Which has the title? the defendant who was the first to purchase and take a deed from the grantee, or the plaintiff who purchased under an execution the teste of which was prior to the defendant's purchase?

It is settled, without any conflict of the authorities, that a purchaser of a fraudulent donee, *bona fide* and for a valuable consideration at a full price, without notice of the fraud, acquires a good title under 27 Eliz., against a subsequent purchaser of the donor, *bona fide* and for valuable consideration at a full price.

It is also settled, but after some conflict of the authorities, that a purchaser of a fraudulent donee, *bona fide* and for a valuable consideration at a full price, without notice of the fraud, acquires a good title under 13th Eliz., against creditors, and purchasers under their execution for a debt existing at the time of the fraudulent conveyance, at a sale subsequent to the sale of the fradulent donee. For both of the purchasers are *bona fide*, for valuable consideration, and the one to whom the first sale was made is preferred, under the maxim—"*Prior est in tempore, portior est in jure.*" Roberts on Fraudulent Conveyances 392, 462, and the cases there cited. *Anderson* v. *Roberts*, 18 Johnson 515. *Brace* v. *Smith*, 2 Mason 252. The *dictum* of Ruffin, Judge, in *Hoke* v. *Henderson*, 3 Dev. 12, is put on the ground of unfairness to the creditors of the

fraudulent donor. He gives no weight to the *proviso* in favor of *bona fide* purchasers, and after setting out the argument on the side of the creditors, waives a discussion, "because the point is not presented by the facts of the case, for the land was sold under the execution against the donor, before the sale on the side of the fraudulent donee."

This question is put at rest by Rev. Code ch. 50, secs. 1, 2, and 4; for the proviso, (which will be again referred to), applies to the 1st sec. which is 13 Eliz., and also to the 2d, sec., which is 27 Eliz. Whatever may be said about fairness or unfairness towards *creditors*, the Legislative will gives preference to a *bona fide purchaser, for valuable consideration at full price and without notice of the fraud and covin.* In our case the plaintiff says he is taken out of the operation of this maxim, by the effect of the teste of the execution under which he claims title; for the execution relates back to the teste, and gives to the creditor a *lien* on the property of the debtor, which lien is prior in point of time to the sale of the fraudulent donee to the defendant.

The case turns upon this point. No direct authority was cited. In *Brace* v. *Smith,* Sup., at page 279, Justice Story, after denying the distinction, between the operation of the 27 Eliz. and the 13 Eliz., in respect to *bona fide* purchases for valuable consideration without notice, says, "I have searched with some diligence to ascertain if that distinction has been recognized in any adjudged case or in any elementary treatise in England. Hitherto my researches have been unsuccessful. In *Wilson* v. *Womal,* Godbolt 161, however, Lord Chief Justice Coke, than whom no man was probably better acquainted with the statute in its true construction, lays down a doctrine that in terms denies the distinction. He says that, "If lessee for years assign one his term by fraud to defeat the execution (upon a judgment against him), and the assignee assigneth the same unto another *bona fide,* that in the hands of the second assignee *it is not liable to execution.*"

Godbolt's reports are not in our library, and we are not able to see certainly, from this extract, that the execution bore teste before the *bona fide* assignment; but we infer the execution was in the hands of the sheriff, from the words "assign one his term by fraud to defeat the execution (upon a judgment against him.)" If so, this is a direct authority for the position that a *bona fide* sale of the fraudulent donee, although after the teste of the execution, passes a good title to the purchaser against the creditor, and a purchaser at a sale under the execution subsequently made.

Let us see how the question stands, "on the reason of the thing." A *lien* does not vest the title in the creditor, but leaves it in the debtor until a levy and seizure in respect to personal property, and until the sale under the execution in respect to land. This is settled. *Frost* v. *Etheridge*, 1 Dev. 30.

The effect of a lien is merely to tie up the land in the hands of the debtor, so that he cannot, either by a voluntary conveyance or by a conveyance for valuable consideration, deprive the creditor of his right to have the land sold for the satisfaction of the execution. So, the lien created by *a lis pendens* does not divest the title, but merely ties up the property until the determination of the suit. In our case, before the teste of the execution, the debtor had passed the land to the donee, and although the conveyance was fraudulent, still it effectually passed the title and was valid as between the donor and donee. So, when the execution issued it had nothing to operate on, for the debtor had nothing and the *lien* created by the teste could not take effect as to him, and it could not take effect on the land in the hands of the donee, except by force of the 13th Eliz., which makes the conveyance void as to creditors. If the donee had retained the land until it was sold under the execution, as the property of the donor in respect to his creditors, the purchaser would have acquired a good title. But the donee did not retain the land, but sold it to the defendant, who was a *bona fide* purchaser for valuable consideration, at a full price, and without

notice of such fraud, before it was sold under the execution; and the defendant insists that he is protected by the proviso in the statute, 13 Eliz., which has the effect to make the first section inoperative, and to render the original conveyance valid as against creditors in favor of such *bona fide* purchaser, and if so the creditor could acquire no lien, for the debtor had parted with the land, and in respect to the *bona fide* purchaser the conveyance was valid, both in regard to the debtor and his creditor. In other words, if the purchaser comes within the proviso, that takes from the creditor all benefit which he would otherwise have had under the first section.

The proviso is in these words (section 4, chapter 50, Rev. Code): "Nothing contained in the foregoing sections shall be construed to impeach or make void any conveyance of any lands *bona fide* made upon and for good consideration to any person not having notice of such fraud."

It is settled that good consideration means valuable consideration, or a fair price. We can see nothing to take the conveyance to the defendant out of the operation of this proviso, or any principle upon which it can be impeached or made void in the face of these express terms. The proviso can only be made operative by giving to it the scope and effect of purging the original conveyance of the fraud with which it was tainted, by allowing the *bona fides* and the full valuable consideration of the second conveyance to supply the want of these qualities in the first, so as to perfect the title of the *bona fide* purchaser, by carrying it back to the donor and claiming the title from him, and thus prevent the title of the first purchase from being "impeached and made void." When the plaintiff says, "My title goes back to the teste of the execution under which I claim," the defendant replies, "My title goes back to the original conveyance made by the debtor, which is purged of the fraud of which I had no notice;" and when the plaintiff says, "The first section makes all conveyances made in fraud void as to creditors," the defend-

ant replies, " The 4th section makes my title good, and declares that nothing contained in the 1st section shall be construed ' to impeach or make void my title.' "

It was said on the argument, " This effect given to the proviso will defeat the object of the act, which was to protect creditors," for debtors will make fraudulent deeds on purpose to enable donees to sell and defeat creditors. That may be so ; but the object of the proviso evidently is to protect *bona fide* purchasers, and when the question is, shall the creditor lose his debt or the *bona fide* purchaser his money, the proviso gives the preference to the purchaser. The result is, that the first *bona fide* purchaser, whether under the donee or under the execution against the donor, acquires the title.

The judgment below is reversed upon the facts found by the referee.

Boyden, J., (*dissentiente.*) I feel compelled to enter my dissent from the opinion of the Court delivered in this case, as I regard it as law, (and I think it is the general opinion of the profession,) that so long as the title to the land continues in the fraudulent grantee, it is, so far as the creditors of the fraudulent grantor are concerned, to all intents and purposes, to be regarded as his land ; and when a creditor, attempted to be defrauded, obtains a judgment against the fraudulent grantor and places his execution in the hands of the sheriff or marshal of the proper county or district, the land thus fraud-. ulently granted is as much bound by the teste of said execution as if no such fraudulent conveyance had ever been made ; and that all persons claiming through or under the fraudulent grantee, subsequent to the test of such execution, are as much bound by the judgment and execution as they would be, if the conveyance was directly from the fraudulent grantor himself. If this were not so, then it would be in vain ever to attempt to defeat the conveyance of a fraudulent grantor ; as all the fraudulent grantee would have to do, to defeat the honest cred-

itor and to consummate his iniquity, would be to find out some one who, in point of fact, was ignorant of the fraud, and sell and convey to him.

I cannot so regard the law, as it would render the statute of frauds almost nugatory. I will not attempt to elaborate the matter, but it may not be improper to remark, that when this case was argued at the last term, Justice Dick, who was then on the bench, fully concurred with me.

PER CURIAM.                                     Judgment for defendant.