A. BRANCH and T. J. HADLEY v. W. H. GRIFFIN et al.

*Judicial Sale—Record—Purchaser for Value—Trustee— Devise—Evidence—Fraud.*

1. Where, pending an action to foreclose a mortgage, a proceeding to set up a lost record essential to plaintiffs' recovery was instituted between the same parties and concluded, and the record thus restored was offered in evidence upon the trial of the action to foreclose; *Held*, that it was a distinct proceeding, though in aid of the first, and could not be collaterally impeached.

2. Inadequacy of price is good ground for refusing to confirm a sale, but it is not sufficient to set it aside after confirmation.

3. Although a trustee will not be permitted to buy at his own sale, if he does so, either directly or indirectly, a purchaser from him for value and without notice, will acquire good title.

4. Where a will devised lands to a trustee for the sole and separate use of M, and at her death "for the use and benefit of the children of the said M;" *Held*, that the children took as a class, and that a sale under a decree of the Court, in which the children then *in esse* were represented, passed the title against those born afterwards.

5. Where a mortgage was executed to secure a contemporaneous as well as a pre-existing debt; *Held*, that the mortgagee was a purchaser in good faith and for value to the extent of the entire amount secured.

6. The facts that the records of the Courts showed a sale of land by a trustee under a decree ; a purchase by and a conveyance to a person not a party to the proceeding, who immediately reconveyed to the trustee ; and that the price paid was inadequate, do not constitute such constructive notice of fraud as will affect the title of a purchaser for value from the trustee.

## DEFENDANTS' APPEAL.

CIVIL ACTION, tried before *Merrimon, J.,* at Spring Term, 1887, of NASH Superior Court.

It is alleged and admitted, that on February 9th, 1883, Presley Griffin executed to the plaintiffs his note for $791.65, and that on January 27th, 1881, he executed to Wm. Barnes his note for the sum of $200 ; and that for the purpose of securing the payment of these notes, he and Margaret, his wife, executed to the plaintiffs a mortgage upon the real estate mentioned in the pleadings ; that the sum of $121.25 has been paid on the note of $791.65, and that no other sum has been paid on either of said notes, and that Presley Griffin died intestate during the year 1884, and the defendants are his widow and heirs at law, and the defendant Wm. Griffin has duly qualified as his administrator.

The plaintiffs ask for judgment against Wm. Griffin, administrator, &c., for the amount of the debts, interest and cost, and against all the defendants for a foreclosure of the mortgage and sale of the land.

The defendants file an answer and a supplemental answer, in which, after admitting the facts as alleged in the complaint, and the willingness of the administrator defendant to pay the plaintiffs debts, but for the want of assets they say by way of defence that James Sullivant, of the County of Nash, died in 1851, seized in fee of the lands referred to in the complaint, leaving a last will and testament, which was duly proved at November Term, 1851, of the County Court of Nash, and recorded.

That Margaret Hammond, mentioned in the will, married Presley Griffin, and is the same person named in the complaint, and that the land mentioned in the will is the same as that referred to in the complaint.

They then insist that the pretended mortgage to the plaintiffs passed no title; that the order made to sell the land described in the complaint in the cause, entitled Presley Griffin, *ex parte*, and under which it was sold on the 26th of June, 1869, when R. J. Morgan was the last and highest bidder at the price of $451.75, was a fraud upon the rights of the defendants and a mere contrivance on the part of Presley Griffin to destroy the equitable title held by the defendant Margaret for life, and after her death by her children.

That at the time the petition was filed by Presley Griffin for the sale of the land, the defendants, except Margaret, were infants, or not then *in esse*, four of them having been since born, and none of them had any notice or knowledge of the petition, nor of the decree and sale, nor of the confirmation thereof; that they have received no part of the price paid, or alleged to have been paid, for said land, and that they have never ratified or assented to the proceedings under which it was sold; that the price of $451.75 was grossly inadequate, and that no part of it was paid, the purchaser R. J. Morgan being " a mere man of straw," buying as agent for Griffin, taking a deed and immediately after reconveying to him.

The defendants further say, that the record of the proceedings under which the land was sold was sufficient to put the plaintiffs upon inquiry, and that they are not purchasers for value without notice, &c.

The plaintiffs reply among other things, that at Spring Term, 1856, of the Court of Equity for Nash County, Presley Griffin and wife Margaret, on behalf of themselves and their children, filed a petition against Jacob Stickland, trus-

tee, &c., alleging that he was misusing the trust property and asking for his removal and the appointment of some suitable person in his stead; and that in said cause a decree was made removing Strickland and appointing Presley Griffin in his stead, requiring of him a bond in the sum of $5,000 for the faithful discharge of his duties as trustee, which bond was duly executed. That thereafter, at Spring Term, 1869, a petition was filed by Presley Griffin and wife Margaret, and the defendants, the infants being represented by their next friend and trustee, their father, for a sale of the land now in controversy, and under an order made therein it was sold, &c.; that on February 9th, 1883, Presley Griffin and wife, then in possession of the land, borrowed of the plaintiffs the sum of $791.65, and executed a mortgage thereon to secure its payment, and on the 12th of February, 1884, the said mortgage was renewed, including therein the note due to Wm. Barnes.

They deny all notice of any fraud or irregularity in the proceedings under which the sale was made, and say that Presley Griffin was a man of excellent character, and deny that he was a party to any fraud upon his children.

The material part of James Sullivant's will is as follows:

"I give and bequeath all the aforesaid residue, my estate both real and personal, to Jacob Strickland, to him and his heirs, in trust and upon the conditions nevertheless, that the said Jacob Strickland will hold the same for the sole and separate use and benefit of Margaret Hammond (now aged about fourteen years) free from the control of any person or persons whomsoever, and more particularly free from the control of any person she may hereafter marry, and should she marry, then the said Strickland is to hold the said property in trust for her, the said Margaret's use as fully as she were a *feme sole* and unmarried, and free from the control and use and disposal of her said husband, and at the death of the said Margaret Hammond, it is my will and desire that the said

Jacob Strickland should hold the said property, both real and personal, for the use and benefit of the children of the said Margaret."

At the Spring Term, 1886, a petition was filed, after due notice, by the plaintiffs in this action against the defendants, " alleging that the petition and decree of sale filed by Presley Griffin and wife and others for the sale of the lands, part of which is included in the mortgage sought to be foreclosed in the above entitled action, has been lost, mislaid or destroyed," &c., and asking to have the lost records restored, &c.

This petition was heard before his Honor, Judge Shepherd, when " the defendant Margaret and all her children were present," and it was offered to prove by them that they had no knowledge of the proceedings instituted by Presley Griffin to sell the land; that they never authorized the use of their names, assented to the sale, or received any part of the proceeds. This evidence was excluded by the Court, and the defendants excepted, but no appeal was taken. His Honor gave judgment for the restoration and perpetuation of the lost records, &c.

When the cause came on for trial at Spring Term, 1887, " his Honor intimated an opinion that the matter of impeaching the proceedings under which the land was sold could not be effected in this action, but that the defendants should have brought a separate action for that purpose. The plaintiffs thereupon declared their wish to waive all such irregularities and to proceed at once with the trial.

The following issues were then submitted to and answered by the jury:

1. Was the sale of the land in controversy a fraud upon the rights of the defendants, or any of them, and a mere contrivance on the part of Presley Griffin to destroy the equitable title held by the defendants?

To this the jury responded " Yes."

12

2. Are the plaintiffs *bona fide* purchasers of said land for value and without notice?

To this the jury responded " Yes," under instructions from his Honor.

3. Were the defendants Ophelia, Nina, Charles and Annie born after the sale by Presley Griffin, trustee?

To this the jury responded " Yes."

4. What part of the $791.65 note was a present or cotemporaneous loan?

To this the jury responded, " $500."

The defendant produced in evidence the report of sale made by Presley Griffin, trustee, &c., under the decree of the Court of Equity filed at Fall Term, 1869, and the deed from said Griffin, trustee, &c., to R. J. Morgan, dated January 27th, 1870, and the deed from said Morgan to said Griffin, dated July 15th, 1870, both of which deeds were duly registered, and both of which embrace the land in controversy in this action.

The defendants insisted that the facts which appear on the face of these deeds, through which plaintiffs claim title, were sufficient to put them upon inquiry. His Honor held that there was no evidence of notice; and directed the jury to find the second issue in the affirmative. Defendants excepted.

Defendants also introduced the equity proceedings under which Jacob Strickland was removed as trustee, &c., and Griffin was appointed; also W. H. Griffin, who testified that he had no notice of the proceedings to sell the land, and that at the date of the sale in 1869, four of the children of Margaret (naming them) were unborn, and that, at low figures, the land was worth two or three dollars per acre. Another witness testified that it was worth $3 per acre at the time of the sale.

It was in evidence that when the first mortgage was executed, February 9th, 1883, a portion of the money loaned was for a pre-existing debt, but at least $500 was cash loaned,

and it was admitted that the Barnes' note was a pre-existing debt. It was also admitted that the mortgage of February 12th, 1884, was in renewal of the mortgage of February 9th, 1883. There was no evidence that plaintiffs had any actual notice of fraud, but defendants insisted that "the report of sale, decree of confirmation, deeds from Griffin to Morgan, and from the latter to the former, were enough to apprise the plaintiffs that the land had been sold only colorably," &c.

His Honor declined to so hold, and defendants excepted.

"3. The defendants further insisted after verdict (this point having been reserved) that the land was held in trust under James Sullivant's will for the sole and separate use of the defendant Margaret, and then at her death was to be held in trust for her children, that is, for such of her children as would then answer that designation; that the Court of Equity had therefore no power to order the sale of the children's interest and estate in the premises.

His Honor decided otherwise, and the defendants excepted.

4. The defendants contended that in any event the plaintiffs were *bona fide* purchasers for value and without notice only as to the $500 loaned by them to Presley Griffin, February 9th, 1883.

The plaintiffs insisted that as to the entire debt of $791.65 they were purchasers for value and without notice.

His Honor ruled in favor of the defendants, and the plaintiffs excepted.

His Honor then rendered judgment as set forth in transcript and both parties appealed to the Supreme Court."

*Messrs. F. A. Wooten* and *H. F. Murray*, for the plaintiffs.
*Messrs. J. Battle* and *C. M. Cook*, (*Messrs. Bunn & Battle* filed a brief,) for the defendants.

DAVIS, J., (after stating the case). 1. There is with the record sent to this Court a voluminous transcript of certain proceedings, commenced by a summons regularly issued on the 12th day of April, 1886, by the Clerk of the Superior Court of Nash, at the instance of A. Branch and T. J. Hadley (who are the plaintiffs in this action) *v.* W. H. Griffin and others, (naming them, who are the defendants in this action,) returnable to Spring Term, 1886, to restore and perpetuate certain records alleged to have been lost or destroyed. That proceeding was by petition and seems to have been prosecuted in compliance with §§ 60 *et seq.* of *The Code.* It was heard before Shepherd, Judge, at Fall Term, 1886, of Nash Superior Court, when judgment was rendered as stated in the case on appeal.

The defendants insist that that proceeding was by a petition in this action, and that the ruling of Judge Shepherd, to which exception was taken, but from which there was no appeal, is now the subject of our review, and that His Honor, Judge Merrimon, erred in the intimation of the opinion "that the matter of impeaching the proceedings, under which the land was sold, could not be effected in this action, but that the defendants should have brought a separate action for that purpose." We think that the proceeding to restore and perpetuate the alleged lost records could not be injected into this action, and that the judgment therein was final, and the transcript thereof has no proper place in this appeal. It was collateral, and while it may sometimes be just and right to continue a pending action until some collateral fact or issue, material to its just determination and requiring a separate action, can be tried, it cannot be that controverted questions of law or fact involved in the collateral issue and determinable in a separate proceeding, can be incorporated in and become a part of the record of the pending action. This would be to make "confusion worse confounded." We cannot try in this action any controversy as

to the existence or non-existence of the alleged lost records. That was settled in the proceeding instituted to determine it, and we think the first exception of the defendants cannot be sustained.

2. But the defendants insist that the facts of record were sufficient to put the plaintiffs on inquiry and that they were not purchasers for value without notice.   They say that the will of James Sullivant, showing the character in which the property was held, the equity proceedings by which Jacob Strickland was removed as trustee, and Presley Griffin appointed in his stead, the grossly inadequate price, and the deed from Griffin, trustee, to Morgan, and the deed from Morgan reconveying to Griffin, all of which were of record, were sufficient to put them on inquiry, and the inquiry, if prosecuted, would have disclosed the fraud; and that therefore they were affected with notice.

It is true that without actual knowledge or information a party may be "affected with notice by information of any fact or instrument relating to the subject matter of his contract, which if properly inquired into, would have lead to its ascertainment."   Adams Eq., 158 ; *Ijames* v. *Gaither*, 93 N. C., 358; *Johnson* v. *Prairie*, 91 N. C., 159; *Hulbert* v. *Douglas*, 94 N. C., 122.   But is there anything in the facts relied on to put the purchasers from Griffin and his wife on inquiry, as to whether he had not acquired title by a fraud upon his *wife*, who signed the deed with him, and his children?

Certainly there was nothing in the will of James Sullivant that could create any suspicion of fraud, and the equity proceeding and the decree under which Jacob Strickland was removed (and the regularity and validity of that proceeding are in no way impeached) disclose the fact that Jacob Strickland was removed for a failure to discharge his duty to the beneficiaries under the will, and that upon the appointment of Griffin a bond of $5,000 for the faithful discharge of

his duties was required and given, and surely there could be nothing in that to°put him on inquiry.

Inadequacy of price may have been a good cause for refusing to confirm a sale, but after confirmation of the sale it could furnish no ground for setting it aside and annulling the sale made under it. *Sumner* v. *Sessoms,* 94 N. C., 371.

That a trustee cannot buy at his own sale is too well settled to need the citation of authority. If he buys directly, or indirectly through another, he holds the property at the election of the *cestui qui trust,* to take the price or demand a resale of the property, but a sale by a trustee to another (though made with a fraudulent intent) passes the legal title to the purchaser, and a *bona fide* purchaser from such a fraudulent vendee, for value and without notice, acquires a good title. *Young* v. *Lathrop,* 67 N. C., 63.

However fraudulent the transaction may have been as between the original parties to the sale, a purchaser who acquires the legal title for value and in good faith, without notice, is not affected by it, and is protected. Such a purchaser, as was the case in *Young* v. *Lathrop,* acquires a good title by purchase at private sale, and the Courts are equally and perhaps more careful in protecting *bona fide* purchasers who derive title through judicial sales, and even where the proceedings under which such sales have been made have been annulled and vacated the purchaser has been protected.

This protection of purchasers, *bona fide* and for value at judicial sales, is illustrated in *Fowler* v. *Poor,* 93 N. C., 466; *England* v. *Garner,* 90 N. C., 197; *Sutton* v. *Schonwald,* 86 N. C., 198, and the many cases cited in them.

Following the rulings of the Court in these cases, we think the second exception of the defendants cannot be sustained.

3. The third exception rests upon the denial of the power of the Court of Equity to order a sale of the interest and estate of the defendants under the will of James Sullivant. The property is given for the use of Margaret for life, and

then " for the use and benefit of the children of the said Margaret."

The children take as a class, and some of them were *in esse* at the time of the sale, and this distinguishes it from the cases cited by the learned counsel for the defendants. It is more like *ex parte Dodd,* Phillips' Equity, 97. In that case it is said : " It is certain if land be devised to a person for life, with an executory devise in fee to his children, the Court cannot order a sale of the land before the birth of any child, because not being *in esse* there can be no one before the Court to represent its interests. * * * But if there be any children *in esse* in whom the estate in fee can vest, a sale may be ordered, because, if their interests require it, they may be represented by guardian; and this may be done though all of the children of the class may not yet have been born." Such is the case before us. As was said in *ex parte Dodd,* this distinguishes it from *Watson* v. *Watson,* 3 Jones Eq., 400, as it also does from *Williams* v. *Hassell,* 73 N. C., 174; *Young* v. *Young,* 97 N. C., 132; *Ex parte Miller,* 90 N. C., 625, and similar cases.

There was no error in the ruling of the Court below in the matters excepted by the defendants.

No error.

PLAINTIFFS' APPEAL.

The facts are the same as those set out in the defendants' appeal.

The jury having found that the sale by which Presley Griffin acquired title was fraudulent, and that the plaintiffs were *bona fide* purchasers for value without notice, and having also found that $500 of the note executed to the plaintiffs was for money loaned, his Honor held that the plaintiffs were purchasers for value and without notice only to the extent of the amount ($500) loaned, and from this the plaintiffs appealed.

It is admitted that the mortgage of February 12th, 1884, was in renewal of the mortgage of February 9th, 1883, and it appears from the record that the credit or time of payment was extended. A mortgage deed executed to and accepted by a creditor without notice and in renewal of a prior mortgage, certainly cannot place the creditor in a worse condition than he occupied under the first mortgage. The greater and substantial part of the consideration of the first mortgage was the money then loaned, and doubtless the inducement and consideration for the loan then made was the security given by the execution of the mortgage. It was not a mortgage simply to secure a pre-existing debt. It was executed for a present and valid consideration moving from the plaintiffs—the advantage to them being the security of their debt, and the advantage to the mortgagor being the use of the money loaned, and the extension of time to pay, and whether the mooted question as to the difference between a mortgage executed to secure a pre-existing debt and one executed to secure a present loan, or upon a present consideration, has been settled or not, there seems to be no question that a mortgage executed upon a valid cotemporaneous consideration, and accepted by the mortgagee in good faith, and without notice of any invalidating equity in others, will be upheld. *Potts* v. *Blackwell*, 4 Jones Eq., 58, and *Brem* v. *Lockhart*, 93 N. C., 191; *Bank* v. *Bridgers*, 98 N. C., 67, and the cases cited.

We think that both upon authority and reason the plaintiffs are entitled to have the property conveyed in the mortgage declared a security for their debt named therein to its full amount, and that there was error in limiting it to the amount of the money loaned at the time of the execution of the mortgage.

The judgment of the Court below must be reformed in this respect.

Reformed and Affirmed.