# REED v. SMITH.

1. A fraudulent sale and conveyance of real property, is void as against the existing creditors of the grantor, and a sale under execution, and conveyance to a creditor of the grantor, divests the title. A subsequent purchaser from the fraudulent grantee, will be postponed to the prior purchaser at the execution sale, though the fraudulent grantee was in possession at the time of the sale, and his vendee was a purchaser for value, and without notice of the fraud.

2. The registration of the sheriff's deed, is notice to the subsequent purchaser.

3. In a controversy between a purchaser at execution sale of land, sold as the property of S, and a purchaser from W, to whom S had sold and conveyed the land, the declarations of W, while he held the title, are admissible to prove fraud in the conveyance from S to him.

4. It is not competent testimony to impeach a conveyance from S to W for fraud, that S proposed to others, to convey the property to them, to defraud his creditors, unless W had knowledge of such proposals, and the motive of S in making them.

Error to the Circuit Court of Perry. Before the Hon. J. D. Phelan.

TRESPASS to try the title to land, by the plaintiff against the defendant in error.

On the trial of the cause, the plaintiff introduced a deed made by the sheriff of Perry, conveying the land in controversy to him. This deed was made on the 4th March,

1844, and recites that he had sold the land to the plaintiff, in virtue of an execution against John Scarborough, in favor of Jacob McElroy, on a judgment for $157 12, and $78 56 costs. The deed was acknowledged on the day of its date, and filed for registration with the clerk of the county court.

The plaintiff also produced the judgments and executions under which the land was sold, and produced the notes on which the judgments were founded, dated 26th February, 1840. Scarborough was in the possession of said land at the time of the sale, and had been from 1833, and claimed, and managed it as his own, by clearing, cultivating and improving it.

The defendant then introduced a patent from the government, for a part of the lands in controversy, to one Jefferson J. Watts, bearing date the 12th September, 1838, and then introduced and read a deed from John Scarborough, conveying the whole of said lands to Watts. This deed is dated the 13th February, 1841, and recites the consideration to be $1,170, acknowledged and recorded in July, 1841.

He also read a deed from Watts to him for the lands, dated the 28th February, 1845, which was recorded the 7th March, 1845, and proved, that Watts was in possession of the land by his tenant in 1845; that Scarborough had left the country, and that he (defendant) was a *bona fide* purchaser for a valuable consideration. There was no proof that he had any notice, or knowledge of a fraud between Scarborough and Watts; nor any actual notice of the purchase by plaintiff at sheriff's sale. Defendant also introduced testimony to prove that Watts had paid money for Scarborough; and the plaintiff introduced evidence tending to prove, that no consideration was paid by Watts to Scarborough; and also to prove by the declarations of Scarborough, that the sale by him to Watts was fraudulent; which the court, on motion of the plaintiff, excluded, and the defendant excepted. Plaintiff also proved by another witness, that a day or two before the sale to Watts, Scarborough wished him to take the title to the land, to prevent it from being sold.

He also proposed to prove the declaration of Watts, in the spring of 1844, after the date of his deed from Scarborough, "that he was afraid Scarborough would lose his land. That

there was an execution against him for the hire of a negro, to which one Horrie was surety, and he would not hold the land, and let Horrie pay that debt; and that if Scarborough did not make some arrangement to pay it, the land should be sold to pay it." This was excluded by the court, and the plaintiff excepted. He also proved by a witness, that in 1843, he was about trading with Scarborough for the land, and inquired of Watts about the title, who informed him that the title was in him, but that any trade he made with Scarborough would be good.

The court charged the jury, that if they believed the testimony, it had shown such an interest and title to said land in Scarborough, as made it liable to levy and sale, at the time it was levied upon, and sold by the sheriff to the plaintiff. But if they believed defendant had shown, that Watts was in possession of the land, by his tenant, in 1845, when he sold to defendant, and that defendant was a *bona fide* purchaser for a valuable consideration, without actual notice of the purchase by plaintiff at sheriff's sale, that the recording of the deed from the sheriff to Reed, on the 4th March, 1844, was not notice to the defendant.

That admitting plaintiff to be a *bona fide* purchaser at sheriff's sale, and a creditor at the time of the sale to Watts, and conceding the deed from Scarborough to Watts to be fraudulent, yet if the plaintiff had lain by, after his purchase, and had not brought suit to recover said land, until after the defendant purchased, that defendant, under the circumstances, was more entitled to protection than he was, and that the plaintiff was not entitled to recover in the action.

The plaintiff also moved the court to charge, that to protect a purchaser from a fraudulent grantee, the purchase must be prior in point of time, to that of a *bona fide* purchaser from the fraudulent grantor. This the court charged to be the law, but added, that in this case, if the plaintiff had failed to bring his action for said lands, before a sale, *bona fide*, and for a valuable consideration, to Smith by Watts, and Smith had no actual knowledge of his purchase at sheriff's sale, the plaintiff could not recover in this suit. To these charges and qualifications, as given, the plaintiff excepted, and now assigns them as error.

Reed v. Smith.

A. B. Moore, for the plaintiff in error, made the following points:

1. The court should have permitted to go to the jury, the declarations of Scarborough whilst in possession of the lands in controversy, even after the sale by him to Watts the vendor of defendant, tending to show that there was a conspiracy between Scarborough and Watts, in making said sale, to defraud the creditors of said Scarborough. See 2 Phil. Ev. C. & H.'s Notes, Part 1, 602-3; Id. 650, 654, 178; Pickett v. Pickett, 3 Dev. 6.

2. The court should have permitted to go to the jury, the declarations of Watts the vendor of defendant, after his purchase from Scarborough, and prior to his sale to defendant, tending to show that he purchased said lands with a view to defraud the creditors of Scarborough. See 2 Phil. Ev. C. & H.'s Notes, 650, 654, 178; Pickett v. Pickett, 3 Dev. 6; Norton v. Pettibone, 7 Cow. Rep. 319.

3. A deed of conveyance of lands in this State, when recorded within six months from the execution thereof, is good against a *bona fide* subsequent purchaser. See Clay's Dig. 256, § 8; Id. 154, § 18; Daniel v. Sorrells, 9 Ala. R. 437.

4. In the United States, the registry of the deed according to the act, is constructive notice of it, and conclusive upon subsequent purchasers. See 2 Kinney, 194, 195; 4 Kent, 174; 2 Johns. Rep. 510; 10 Ibid. 466; 2 U. S. Dig. 36, § 237, 247.

5. As Smith's (the defendant's) purchase was subsequent in point of time to the purchase of Reed the plaintiff, under execution against Scarborough the fraudulent grantor, he will not be protected by the statute, although he may have purchased without knowledge of the fraud, in the sale from Scarborough to Watts. See Anderson v. Roberts, 18 Johns. Rep. 516; Story's Eq. 413, § 434.

John, for defendant in error, made the following points:

1. All the cases agree, that declarations made by the person under whom the party claims, after the declarant has parted with his right, are utterly inadmissible to affect any one claiming under him. Jackson ex dem. v. Shearman, 6 Johns. 18; 4 Cow. 587; 6 Har. & John. 276; 16 John. 302;

4 How. 519-20; 3 Cow. 622; 1 Raym. 396, note; McBride et al. v. Thompson, 8 Ala. 650.

2. The declarations of a grantor, made before the conveyance by deed, in order to affect the grantee, or to show fraud, must be brought to the knowledge of the grantee, for if the grantee did not participate in the fraud, then the title of the grantee is good. Beach v. Collin, 4 Day, 284; Jones v. Norris, surv. part. 2 Ala. 526; Oden v. Rippeto, 4 Ib. 68.

3. The declarations of Scarborough therefore, made before the sale to Watts, should not have been given to the jury, without tracing knowledge of them to Watts. And his declarations, after the sale to Watts, should not have been introduced to invalidate his deed; they were only proper to show the character of his possession, or as to possessory title, his deed was better evidence of title than his declarations. Kimball v. Morrill, 4 Greenl. 368; Jackson ex dem. v. Shearman, 6 John. 18, 19.

4. The declarations of Watts were admitted, as proven by Steed and Phillips. That part of the bill of exceptions which shows that his declarations were rejected, is shown by other parts of the bill of exceptions to be incorrect, and therefore that part should not be regarded by the court. But these declarations are not of such a character as to affect Smith, and therefore the plaintiff has not been injured. But admit that these declarations might be evidence under some circumstances, yet in this case the plaintiff cannot complain, because a *bona fide* purchaser for a valuable consideration, without notice of the fraud, who purchases from a fraudulent grantee, is protected, and takes the title purged of the fraud. Anderson v. Roberts et al. 18 John. 516; Fletcher v. Peck, 6 Cran. 133; Gordon v. Haywood 2 N. H. 402; 1 Johns. Ch. 213; Fenno et al. v. Sayre and Converse, 3 Ala. 458; Mallory v. Stodder, 6 Ala. 801.

5. The recording of the sheriff's deed to Reed was no notice to Smith; he purchased from Watts, while Watts was in actual possession of the land, and was only bound to see that no incumbrances existed against the party in possession by fair claim of documental title. Fenno et al. v. Sayre & Converse, 3 Ala. 458; 1 Johns. Ch. 566; Washburn's Dig. 431, § 59.

6. The fact that Reed purchased under sheriff's sale, before Smith purchased from Watts, cannot affect Smith, he being an innocent purchaser. Reed had notice when he purchased, but Smith had not. The remark of the court in Anderson v. Roberts et al. 18 John. is a doctrine without authority, and would not apply to a case like this.

DARGAN, J.—If the deed from Scarborough to Watts was fraudulent, and intended to hinder and delay creditors, it was null and void, as against the then existing creditors of Scarborough, and being void, it would form no obstacle to the levy upon, and the sale of, the land thus fraudulently conveyed. This is not denied by the defendant's counsel, but it is contended, that Smith is a *bona fide* purchaser from Watts, who was in possession, that he had no notice either of the fraud or the sale of the sheriff, and consequently holds the legal title purged of all fraud.

If Smith has the legal title as against Reed, obtained *bona fide*, and without notice of fraud, or any older equitable title, such legal title will protect him, both at law and in equity; for at law the legal title must prevail, and a court of equity will always protect a *bona fide* purchaser of the legal title, who has paid the purchase money, without notice of the equity sought to be enforced against him. These rules are so familiar, that it is unncessary to refer to authorities to sustain them.

The question then is, has the defendant in error the legal title? The debts to satisfy which the land was sold, existed at the time Scarborough conveyed to Watts. Judgment on the debts were rendered against Scarborough in the fall of 1841—executions were issued and levied on the land in January, 1843, and in March thereafter, the plaintiff purchased at sheriff's sale, and received a deed, which was duly recorded. The defendant in error did not purchase of Watts until the year 1845. At the time of the sale, as between Scarborough and Watts, the legal title was vested in Watts; but if the deed through which he claimed title was fraudulent and void as to creditors, the purchase of Reed at sheriff's sale divested the title of Watts, and left in him no title whatever,

49

that he had derived by means of his deed; and the sheriff's deed gave to Reed all the right and title that was conveyed to Watts, by the deed of Scarborough to him. The legal title to the land being divested from Watts, he could not convey to Smith by his deed in 1845, the title he derived from Scarborough; and the fact that Smith is a *bona fide* purchaser, for a valuable consideration, without notice, cannot give him a legal title, that was not in his grantor, but was outstanding in another.

This very question arose in the case of Anderson v. Roberts & Boyd, 18 John. Rep. 515, and it was there held, that a *bona fide* purchaser from a fraudulent grantee, would be protected against the creditors of the fraudulent grantor. But in order to entitle the purchaser to this protection, he must show that his purchase, in point of time, was prior to the purchase under executions against the fraudulent grantor, at the suit of a creditor, whose debt existed at the time of the fraudulent grant.

This decision is in perfect harmony with the principle, that a grantor cannot convey by his deed an outstanding legal title in another—and if he cannot convey such outstanding title, his purchaser cannot be protected against it.

The charge of the court rendered it unnecessary to examine, whether the deed from Scarborough to Watts was fraudulent or not. His instructions to the jury were, that although the deed was fraudulent, if they believed that Smith was a *bona fide* purchaser, without notice of the sheriff's sale, that the plaintiff could not recover; and that the registration of the sheriff's deed did not charge him with notice. This charge is in conflict with the law, and for this error, the cause must be reversed; and we shall therefore lay down the rules that seem to be applicable to the evidence contained in the record. The rule is established beyond controversy, that the declarations of a grantor, made whilst he was in possession, and before he has conveyed his title to another, are admissible, not only against himself, but also against all who claim under him. See 7 Conn. R. 319; 14 Mass. 245; 2 Conn. R. 472; 2 Term R. 55; 11 Wend. 536; 4 John. R. 230; also, 2 C. & H. Notes to Phil. Ev. 652. And we

know it is the daily practice, to give in evidence the declaration of former owners, made before they parted with their title, showing the extent of their possession, as well as the character of their title. It is true, that those declarations would not defeat an absolute title, if it be shown that the declarant had such title. But like other evidence, they are to be weighed by the jury, and such effect is to be given to such declarations as the jury believe they are entitled to. By this rule, we see that the admissions of Watts, before his sale to Smith, are admissible to prove fraud in the deed from Scaborough to him. It is also equally well settled, that the declarations of a grantor made after he has parted with his title, cannot be received as evidence to impeach his deed. See 8 Ala. R. 650; 6 Har. & John. 276; 16 John. 302; 4 Cow. 587.

Nor is it permissible, with the view to show fraud on the part of the grantee, to prove that the grantor proposed to others, fraudulently to convey the property to them, unless the grantee had knowledge of such proposals, and the object and motive of the grantor in making them. 4 Ala. R. 68; 2 Ib. 526.

In conclusion, we will observe, that whether a *bona fide* purchaser would be protected, if his purchase was made before the sale of the sheriff, but after the rendition of the judgment against the fraudulent grantor, we do not intend to decide, but leave that question to be adjudicated when it shall arise.

Let the judgment be reversed and the cause remanded.