# Thames & Co. *v.* Rembert's Adm'r.

*Bill in Equity by Judgment Creditor, to set aside Fraudulent Conveyance by Debtor.*

1. *Examination of title-deeds by purchaser; when chargeable with notice.*—A purchaser of lands has the right, and it is his duty, to examine every instrument which forms a link in the chain of his vendor's title; and he is chargeable with notice of every fact recited in any of those instruments, or appearing on their face; hence, when a deed is, on its face, fraudulent and void as against the grantor's creditors, a sub-purchaser from the grantee can not, as against those creditors, claim protection as a *bona fide* purchaser without notice.

2. *Answer, or decree pro confesso; effect as evidence against co-defendant.*—Neither the answer of one defendant to a bill, nor a decree *pro confesso* against him, can have any effect as evidence against a co-defendant, who claims under a conveyance from the former executed before the filing of the bill.

3. *As to proof of fraud.*—Fraud is never presumed, but must be proved by the party asserting it; and it will not be imputed, when the facts and circumstances, from which it is supposed to arise, may reasonably consist with honest intentions; yet, on the other hand, it is not always required to be established by direct and positive evidence, but, like any other fact, may be proved by circumstances, each inconclusive, but all together leading to a well-grounded, rational belief of its existence.

4. *Conveyance by insolvent debtor to relative held fraudulent as to creditors.*—A conveyance, in form a deed of bargain and sale, reciting the payment of a valuable consideration, partly in cash, and the grantee's personal obligations, without security, for the residue payable in cotton, *held* fraudulent and void as against the grantor's creditors, notwithstanding the positive denials of both the grantor and grantee under oath as witnesses, on proof that, at the time of its execution, the grantor was insolvent, and pressed by a suit for a large amount, which ripened into judgment in a few months; that the deed conveyed all his visible property, except that which was exempt from legal process, and that which was incumbered to its full value; that the grantee was a young man not twenty-one years of age, with small pecuniary means, a relative of the grantor, and about to consummate a marriage with his daughter; that payment of the greater part of the purchase-money was, by the terms of the deed, to be made by annual. nstallments through a series of six years; that the grantor remained in possession of the property; that a part of the lands were, within a short time afterwards, conveyed by the grantee to the grantor's wife, on a recited consideration which was fictitious; and that the parties united in raising money for their common benefit, by mortgages on the land, and pledges of the notes or obligations given for the unpaid purchase-money.

5. *Title of purchaser from fraudulent grantee.*—A purchaser from a fraudulent grantee may, as against the creditors of the grantor, set up the defense of a *bona fide* purchase for valuable consideration without notice, when the deed is not fraudulent and void on its face.

6. *Who is purchaser for valuable consideration.*—To establish the defense of a *bona fide* purchase for valuable consideration without notice, good faith and a valuable consideration (that is, money paid, a liability assumed, or an injury incurred) must concur: extending the day of payment of an antecedent debt, or taking a mortgage to secure a debt presently contracted, or an absolute purchase of property in payment of an antecedent debt, is a valuable consideration; but a mortgage to secure an antecedent debt, without any extension of the day of payment, is not.

7. *Mortgage of wife's lands.*—A mortgage by husband and wife, of lands be- longing to the wife's statutory separate estate, whether given to secure her own debt, or the debt of her husband or any other person, is an absolute nul- lity, and no rights can be acquired under it.

8. *Lien of execution.*—The lien of an execution does not vest in the judg- ment creditor either a *jus ad rem*, or a *jus in re*, and can not prevail against the prior equity acquired by a purchase for valuable consideration without notice before a levy.

APPEAL from the Chancery Court of Marengo.

Heard before the Hon. A. W. DILLARD.

The original bill in this case was filed on the 16th May, 1872, by Frank N. Kitchell, as the administrator *de bonis non* of the estate of James M. Rembert, deceased, against David Brooks Jackson and Lucius Kelly; and sought to set aside, as fraudulent and void, a conveyance executed by said Jack- son to said Kelly, a copy of which was made an exhibit to the bill, and which was in the following words :

"This indenture, made and entered into this 8th day of March, A. D. 1869, by and between David B. Jackson and his wife, P. G. Jackson, of the first part, and Lucius Kelly, of the second part, all of Marengo, State of Alabama, *wit- nesseth,* that the said parties of the first part, for and in con- sideration of the sum of forty-two hundred dollars to them in hand paid by the said party of the second part, at and be- fore the sealing of these presents, the receipt whereof is hereby acknowledged ; and for the further consideration of *he,* the said Kelly, of the second part, executing to us his six promissory notes, or bonds, to be paid in cotton, as follows : firstly, his bond for forty-four bales of cotton, as payable and due to us, or our order, on the first day of January, or by that time at furthest ; the cotton to be delivered as gathered and packed, of average quality, and in good order and condi- tion, amounting to 22,000 pounds of cotton, to be delivered at 'Bickley's Landing,' or some other convenient point, which may be hereafter agreed on by us ; which bond is to bear in- terest from the first day of January, 1870, estimating the cot- ton at twenty cents ; and the second, for the same amount, 22,000 pounds, to be delivered as the above, and under the same requirements in every thing except the interest—there is to be no interest until the first day of January, 1872 ; the third payment, of 22,000 pounds, due and payable during the Fall of 1872, and by the first of January, 1873 ; and all the six payments, each amounting to 22,000 pounds of lint cot- ton, of average quality, and to be in good order, and to be delivered in equal annual installments, until the whole amount of the 132,000 pounds of cotton shall have been de- livered and completed by the first day of January, A. D. 1876; which amount of 22,000 pounds of cotton, in equal an-

[Thames & Co. v. Rembert's Adm'r.]

nual installments, except the first, due the first day of January, to bear interest as hereinbefore stated, and to be delivered in bales, well wrapped, in good bagging and iron ties; and the said Kelly is to obtain receipts for the same from the warehouse-keeper, and furnish the same to the said parties of the first part, with the weight of each bale as delivered marked thereon: we, the said David B. Jackson and his wife, P. G. Jackson, have this 8th day of March, A. D. 1869, granted, bargained, and sold, and by these presents do grant, bargain, and sell and convey, unto the said Lucius Kelly, his heirs and assigns, the following described real and personal property; the realty consisting of the following tracts, or parcels of land, to-wit," particularly describing them, and stating the whole number of acres to be 2,420 acres, more or less. "*To have and to* hold unto the said Lucius Kelly, and unto his heirs and assigns forever, together with all and singular the appurtenances thereto belonging, or in any way appertaining. And we covenant and agree to and with the said Lucius Kelly, his heirs, executors and administrators, forever to warrant and defend the title to the above-bargained premises, to him, the said Lucius Kelly, against the claim or claims of all persons whomsoever claiming the same; as also all our corn, fodder, and provisions on our plantation, as well as our tools, teams, stock, consisting of about fifteen hundred bushels of corn, ten thousand pounds of fodder, twenty-five mules and horses, five pairs of oxen, sixty head of cattle, one hundred head of hogs, twenty-five head of sheep, three wagons, and all farming utensils on said plantation, as well as our prospective crop for the year 1869; the said Kelly binding himself to gather said crop in good time, and to ship the same to Watson, Erwin & Co., commission-merchants, of Mobile, Alabama, and to pay all our liabilities to them, the said Watson, Erwin & Co. In consideration of all which, we have set our hands, and *affix* our seals, this 8th day of March, 1869." (Signed by said Jackson and wife, attested by two witnesses, and admitted to record, on proof by one of the subscribing witnesses, on the 20th March, 1869.)

The complainant filed his bill as a judgment creditor of said D. B. Jackson, his judgment having been rendered under the following circumstances: On the 10th June, 1867, the complainant, as the administrator *de bonis non* of said Rembert's estate, recovered a decree in the Probate Court of Marengo county against Charles Irby, the administrator in chief of said estate, for $9,692.28; on the 2d November, 1867, a garnishment on this decree was sued out against said D. B. Jackson, as the debtor of Irby; and on the 24th April, 1869, a judgment was rendered against him as garnishee, for

$6,195.20. The bill alleged that Jackson was largely in-
debted, and in fact insolvent, at the time he executed said
conveyance to Keily; that the conveyance embraced all his
property, real and personal, "which was not already incum-
bered by liens for amounts greater than its value;" that it
was executed with the intent to hinder, delay, and defraud
the creditors of the grantor, and was fraudulent and void in
law as against the complainant; that he could not obtain
satisfaction of his judgment against Jackson, except out of
the property conveyed by the deed; that executions on his
judgment had been in the hands of the sheriff, continuously,
since the 9th February, 1872; and that the conveyance cast
such a cloud on the title to the property, that it would not
command an adequate price at a sale by the sheriff. The
bill prayed that the conveyance might be declared null and
void; that the property conveyed by it might be sold, and
the proceeds applied in satisfaction of the complainant's
judgment against Jackson; that an account might be taken
of the hire and rents with which Kelly was chargeable; and
for general relief.

The defendants filed a joint demurrer to the bill, but the
record does not show any action or decision upon the de-
murrer. Afterwards, on the 2d February, 1874, a decree *pro
confesso* was entered against them for want of an answer. On
the 10th February, 1874, an amended bill was filed, bringing
in, as defendants, Mrs. P. G. Jackson (the wife of said D. B.
Jackson), the Planters' and Merchants' Insurance Company
(a corporation doing business in Mobile), C. E. Thames &
Co. (a mercantile partnership in Mobile), and Malone &
Foote (also a mercantile firm in Mobile); "all of whom," it
was alleged, "claim to have an interest in the tract of land
and other property mentioned in said bill of complaint, but
complainant is not informed what that interest is." Malone
& Foote filed a disclaimer, and the bill was dismissed as to
them. A joint answer was filed by Thames & Co. and the
P. & M. Insurance Company, setting up several mortgages
executed by said Jackson and wife and Kelly, to said Thames
& Co., and by them assigned to said P. & M. Insurance Com-
pany; detailing all the transactions between said Thames &
Co., Jackson, and Kelly, out of which the mortgages origina-
ted; insisting on the validity of the conveyance by Jackson
to Kelly, and claiming to be entitled to protection as *bona
fide* purchasers for valuable consideration without notice.
An amendment of the bill was afterwards added by consent,
alleging that, after the filing of the original bill, the com-
plainant's decree against Irby was paid by H. A. Woolf and
J. E. Poelnitz, who were sureties on said Irby's bond as ad-

ministrator, and was thereupon assigned to them by the complainant; and that the suit was prosecuted for their benefit.

On final hearing, on pleadings and proof, the chancellor held that the conveyance by Jackson to Kelly was fraudulent and void on its face, and rendered a decree for the complainant in accordance with the prayer of the bill. From this decree Thames & Co. and the P. & M. Insurance Company appeal, and here assign it as error.

W. E. & R. H. CLARKE, and WATTS & SONS, for appellants.

W. A. GUNTER, contra.

BRICKELL, C. J.—The bill was filed by the appellee, a judgment creditor of D. Brooks Jackson, to vacate a conveyance of lands and personal property, dated March 8th, 1869, made by said Jackson to Lucius Kelly, because it was intended to delay, hinder, and defraud the creditors of the grantor. The deed is of bargain and sale, reciting, as its consideration, the payment in money by Kelly to Jackson, of the sum of forty-two hundred dollars, and his six several obligations for the payment, by the first day of January, 1870, and each successive year until and including the first day of January, 1875, of forty-four bales of cotton, weighing in the aggregate twenty-two thousand pounds, at twenty cents per pound. Jackson and Kelly were originally the only defendants to the bill; and they, after having demurred, made no further defense, but suffered the original and amended bills to be taken as confessed. Mrs. Priscilla E. Jackson, the wife of the grantor, C. E. Thames & Co., and the Planters' and Merchants' Insurance Company, were brought in by an amended bill, upon the allegation that they claimed some interest, the value of which was unknown, in the property covered by the deed.

As errors are assigned only by Thames & Co., and the P. and M. Insurance Company, it is not necessary to refer, for an understanding of the questions to be decided, to any other of the pleadings than their answer. They deny that the conveyance to Kelly, made by Jackson, was intended to hinder, delay, and defraud the creditors of the latter; and insist that it was made in good faith, upon an adequate and valuable consideration. However this may be, they aver that they stand as *bona fide* purchasers from Kelly, without notice of any fraud infecting the conveyance to him, which is fair and valid upon its face, and have an equity superior to that of the appellee as a judgment creditor of Jackson. The case thus resolves itself into two inquiries: 1st, whether

the conveyance from Jackson to Kelly is fraudulent as to the creditors of the former; 2d, if it be fraudulent, whether Thames & Co., and the P. and M. Insurance Company, are entitled to protection as *bona fide* purchasers from Kelly.

1.   The chancellor seems to have been of the opinion, that, on its face, the conveyance to Kelly was fraudulent and void as to the creditors of Jackson.   If that was true, it would be decisive of the case in all its aspects; for, of all that appears upon the face of that conveyance, to those subsequently dealing with Kelly, and acquiring rights which must be traced to it, notice must be imputed conclusively.   A purchaser has the right, and it is his duty, to examine every instrument forming a link in the chain of title; and of such instruments, the presumption is, that he has knowledge; because he has the means of acquiring it, and if he does not acquire it, his own negligence is the cause of his ignorance, and it is not the negligent the law favors.

But, it is an error to suppose the conveyance is, on its face, fraudulent as to the creditors of the grantor.   In form, consideration and covenant, it is an · ordinary deed of bargain and sale; not disclosing that the grantor was embarrassed by debt, or that there was any incapacity of entering into the bargain resting on the grantee, or that any other relation than that of which it is evidence, vendor and vendee, existed between the parties.   Whatever of suspicion may cloud it— whatever may be the evidence of fraud it was intended to consummate, depends upon extrinsic evidence.   It does not require any extended discussion of that evidence to satisfy the mind that, though the chancellor was in error, in pronouncing the conveyance fraudulent on its face, he was not in error in his conclusion, that the evidence showed satisfactorily that it was not *bona fide*, but colorable—intended and used to hinder, delay, and defraud the creditors of the grantor.

2.   We do not inquire, whether Kelly and Jackson have fairly explained the causes which induced them to suffer the bills to be taken as confessed; nor whether, if they alone were interested in the result of the suit, they could lessen or qualify the effect of the decree, by any evidence, or explanation whatever.   Before the filing of the bill, and, of consequence, before the rendition of the decree, the mortgages they had executed to Thames & Co., and the assignment of the latter to the P. and M. Insurance Company, were operative. There was no identity, or community of interest; no combination, or collusion, shown or averred, which would render them subject to be affected by the admissions or the laches of Kelly and Jackson.   If the latter had answered, admit-

ting all the allegations of fraud, and every matter of fact essential to the appellee's right of recovery, the answer could not have been read as evidence against their co-defendants. The decree *pro confesso* is no more than the admission of record by them, as such an answer would have been, of the truth of the allegations of the bill; and while binding and conclusive upon them, is not evidence against their co-defendants.—*Julian v. Reynolds*, 8 Ala. 680. It must, therefore, be conceded that, as against the appellants, the fraud in the conveyance to Kelly must be proved as averred, and as fully proved as if Kelly and Jackson had entered into the litigation, denying the fraud, and insisting upon the validity of the conveyance.

3. It must also be conceded to the appellants, that the burden of proof rests upon the appellee. It is a general, if not a universal rule, that a plaintiff in an action at law, or a complainant in a suit in equity, assumes the burden of proving every affirmative fact, essential to his right of recovery. No material fact is presumed; and the rule is general, in courts of law and of equity, that a party relying upon fraud, must aver it with certainty, and must prove it as averred. It is often said, the law never presumes fraud; and that it will not be imputed, when the facts and circumstances, from which it is supposed to arise, may reasonably consist with pure intentions. This is certainly true, when no confidential relation exists between the parties, subjecting the one to the influence and control of the other, and disadvantageous bargains or contracts have been made, by which the one in whom confidence is reposed derives profit, and the other sustains detriment. But, it must not be supposed that fraud must be proved by direct and positive evidence, and is incapable of proof by circumstances leading to a well-grounded, rational belief of its existence. There is no fact which may be the subject of controversy in a judicial proceeding, civil or criminal, that is not the subject of proof by circumstantial, as distinguished from positive or direct evidence.

Where a fraud is contemplated and committed upon creditors, concealment of it is the first, and generally the most persistent, effort of those who are engaged in it. Publicity would render their acts vain and useless. Leaving direct and positive evidence, accessible to those injured by it, would be the equivalent of a confession of the culpable intent, and of the defeasible character of the transaction. There are numerous circumstances, so frequently attending sales, conveyances and transfers, intended to hinder, delay, and defraud creditors, that they are known and denominated *badges of fraud*. They

[Thames & Co. v. Rembert's Adm'r.]

do not constitute—are not elements of fraud, but merely circumstances from which it may be inferred. So, there are many circumstances, from which crime, and the identity of the criminal agent, may be inferred; yet no one of them, in itself, criminal. When a fact is proved, or to be proved, by circumstantial evidence, the concurrence of a number of independent circumstances, each tending to prove it, increases and strengthens the probability of its truth. They may be, each and all, explained, and their probative force lessened, if not destroyed. But the absence of evidence in explanation, or weakening or neutralizing their force, adds to the probability of the truth of the conclusion to which they point.

4. It is but seldom that, in any one case, so many badges of fraud, so many circumstances indicative of an intent to hinder, delay, and defraud creditors, can be found, as were attendant upon the particular transaction we are investigating. The grantor was insolvent, and pressed by suit, ripening into judgment, for a sum exceeding six thousand dollars, in less than two months after the sale and conveyance of all his visible, tangible property, not exempt from execution, or not incumbered with liens exceeding its value. The sale is to a relative, engaged in a contract of marriage to his daughter, which is consummated in the course of the current year. A credit of six years is given for the payment of the larger part of the purchase-money to the vendee, not of pecuniary ability to make so large a purchase, and laboring under the disability of infancy, incapable of entering into a binding contract of purchase. The conveyance recites forty-two hundred dollars of the purchase-money was paid in cash; yet it was not paid, but the vendee assumed to his brother the payment of a debt of forty-five hundred dollars owing by the grantor, on the promise of the latter to account for the excess of three hundred dollars. In less than six months, the vendee, probably about the time he became of age, conveys a part of the lands, including the homestead, in the possession of which the grantor remained, to the wife of the grantor; the conveyance reciting, as its consideration, forty-five hundred dollars in cash, paid by the wife. The payment was not made; but the real consideration was, the promise of the husband to surrender and cancel one of the obligations given by Kelly to him for the purchase-money. The obligation was not surrendered until February, 1872, and no demand for it seems to have been previously made. These obligations were pledged, and employed to enable the vendee to raise money; and finally, in February, 1872, when Kelly is desirous of extending the time of payment of a large debt he had contracted in cultivating the lands, and obtaining a fur-

ther advance, and Jackson is desirous of obtaining an advance of money and credit, all but the one surrendered, are pledged; and mortgages on all the lands are given by Kelly and Mrs. Jackson to secure the payment of all the debts, Kelly's and Jackson's.

These circumstances are unexplained—there is an absence of all evidence having a tendency to lessen their weight, or the probability of the truth of the conclusions to which they lead. The vendor and vendee, it is true, in their testimony, deny and disclaim all intent to hinder, delay, and defraud the creditors of the grantor, and avow the fairness of the transaction. But these facts and circumstances outweigh all such general declarations—they speak an unequivocal language, which can not be answered by a mere denial of its truth, or protestations that the inferences, to which they reasonably lead, are not true and just. Kelly denies all knowledge of the pendency of the suit against Jackson, or of his embarrassment or insolvency, when he entered into the contract of purchase, and received the conveyance. The denial may or may not be true—in the present controversy, its credibility depends upon its consistency with the opposing evidence, with which it must be compared. His relationship to the grantor, the nearer relation then contemplated, and his long intimacy in the family, are, of themselves, facts tending to fix upon him knowledge of the grantor's embarrassment, insolvency, and of the pendency and pressure of suit against him. Combine them with the unusual character of the transaction—a man of age and experience in planting, making a sale and conveyance of his plantation, stock, farming utensils, and all his visible, tangible property, not exempt from execution, or incumbered by liens, to a young man of small pecuniary ability, not of age, of but little experience in planting, on a long credit, not requiring from him security of any kind; and the conclusion seems irresistible, that some other motive than a mere sale of the property, it must have appeared to Kelly, was operating on the grantor. It would be strange, if he did not know, that he made no inquiry as to the motive; and if he made inquiry, that is not stated. The more rational and juster inference is, that he knew of Jackson's embarrassment—of the pending suit which would soon pass into judgment, from which liens could be created, and incapacitate him from making any disposition of his property prejudicial to the diligent creditor. Without dwelling further upon this branch of the case, we concur in the conclusion of the chancellor, that the sale and conveyance to Kelly was not *bona fide*—that it was colorable—in-

tended and employed to hinder, delay, and defraud the creditors of the grantor.

5. It was at one time held, by some authorities, that a *bona fide* purchaser, from a fraudulent grantee, was not entitled to protection against the claims of the creditors of the fraudulent grantor.—*Roberts v. Anderson*, 3 Johns. Ch. 371; *Preston v. Crofut*, 1 Conn. 527; *Hoke v. Henderson*, 3 Dev. 12. The argument, by which the doctrine was supported, was that, by the very terms of the statute of frauds, the conveyance was pronounced *utterly void, frustrate, and of no effect*, and a subsequent conveyance from the fraudulent grantee, of consequence, could have no foundation on which to rest. It was also argued, that it was against the policy of the statute to afford protection to a subsequent purchaser from the fraudulent grantee, though he parted with value, in ignorance of any infirmity in the title he was acquiring.

Quoting the words of Ch. KENT: "Its object" (the statute) "was, to secure creditors from being defrauded by the debtor; and the danger was, not that he would honestly sell for a fair price, but that he would fraudulently convey, upon a secret trust between him and the grantee, at the expense of the creditors. If the debtor sells himself, in a case where the creditor has no lien, and sells for a valuable consideration, he acquires means to discharge his debts; and it may be presumed he will so apply them. If his fraudulent grantee be enabled to sell, the grantor cannot call those proceeds out of his hands, and the grantee can either appropriate them to his own use, or to the secret trusts upon which the fraudulent conveyance was made. There is more danger of abuse, and that the object of the statute would be defeated, in the one case, than in the other." The decree of Chancellor KENT was reversed on error (*Anderson v. Roberts*, 18 Johns. 516); and it was dissented from, and the contrary doctrine held by Judge STORY, in *Bean v. Smith*, 2 Mason, 252. The case of *Hoke v. Henderson*, 3 Dev. 12, was expressly overruled in the more recent case of *Young v. Lathrop*, 67 N. C. 63; *S. C.*, 12 Am. Rep. 603. And now, in nearly, if not all the States, the doctrine is settled, that a fraudulent conveyance will not, at the instance of the creditors, be vacated to the prejudice of an innocent purchaser from the fraudulent grantee.—2 Lead. Eq. Cases, 42; Bump on Fraud. Conv. 480–490; 4 Kent, 464.

This doctrine was announced in the cases of *Abney v. Kingsland*, 10 Ala. 355; *Reed v. Smith*, 14 Ala. 380; *Bryant v. Young*, 21 Ala. 264; *Cummings v. McCullough*, 5 Ala. 324. Though, in express terms, the statute of frauds declares a conveyance or assignment, in writing, or otherwise, made

with intent to hinder, delay, or defraud creditors, purchasers, or other persons, void, it is so declared only "against the persons who are, or may be, so hindered, delayed, or defrauded, their heirs, personal representatives, and assigns." Code of 1876, § 2124. All our decisions have pronounced, that conveyances, grants, or assignments, in fraud of creditors, are valid and binding between the parties, passing the title ; that they are merely voidable at the instance and election of those aggrieved by them. Strangers cannot impeach them, and, until creditors or purchasers call them in question, they are as effectual, as similar transactions fair and *bona fide*, uninfected by a covinous intent.—2 Brick. Dig. 16, § 45. Having the title, no infirmity appearing on its face, the fraudulent grantee has the incident of the title, the right of alienation ; and its undisclosed infirmity, of which only creditors or purchasers can take advantage, is cured, and the title in the hands of a *bona fide* purchaser ceases to be defeasible at their instance and election. Any other principle would embarrass the alienation of property, and involve innocent purchasers in loss as grievous, subject them to frauds as obvious, as the loss, or the frauds, against which the statute of frauds intends to protect creditors of, and purchasers from the original fraudulent grantor.

"If a suit be brought to set aside a conveyance," said C. J. MARSHALL, in *Fletcher v. Peck* (6 Cranch, 33), obtained by fraud, and the fraud be clearly proved, the conveyance will be set aside, as between the parties ; but the rights of third persons, who are purchasers for a valuable consideration, cannot be disregarded. Titles, which, according to every legal test, are perfect, are acquired with the confidence which is inspired by the opinion that the purchaser is safe. If there be any concealed defect, arising from the conduct of those who had held the property long before he acquired it, of which he had no notice, that concealed defect cannot be set up against him. He has paid his money for a title good at law ; he is innocent, whatever may be the guilt of others, and equity will not subject him to the penalties attached to that guilt. All titles would be insecure, and the intercourse between man and man would be very seriously obstructed, if the principle be overturned."

6. A *bona fide* purchaser, entitled to protection against prior equities, or latent infirmities in the title of his vendor, who is apparently seized, and in the transaction with him pretends to be seized in fee of the legal estate, is one who, in good faith, without notice, parts with value, or changes his position for the worse, under the belief that he is acquiring the legal estate. Good faith, and a valuable considera-

tion, are the essential elements of a *bona fide* purchase a court of equity will not disturb. The two must concur. A mere volunteer may in good faith acquire the estate, but protection is not afforded him ; nor is it afforded to a purchaser parting with value, having notice of the prior equity, or the latent infirmity of the title. It is not an absolute sale and conveyance, which alone will entitle the purchaser to protection. A mortgagee, acquiring the estate as a security for a contemporaneous debt, is entitled to the same protection as the grantee in an absolute conveyance.—*Boyd v. Beck*, 29 Ala. 713 ; *Wells v. Morrow*, 38 Ala. 125. The mortgage then enters into, and forms part of the consideration, upon which credit is given. But, if the mortgage is a mere security for an antecedent debt, the mortgagee will not be entitled to protection. The reason is, that the mortgage places him in no worse condition than he was before accepting it : he parts with nothing of value, the debt due him continuing unchanged in obligation ; and there is no ground upon which protection against the older equity, or prior right, can be founded.—*Manhattan Co. v. Evertson*, 6 Paige, 457 ; *Agricultural Bank v. Dorsey*, 1 Freeman's Ch. 338. But a creditor, purchasing in payment of a pre-existing debt, will be protected.—*Ohio Life Ins. Co. v. Ledyard*, 8 Ala. 866. And if the mortgage is given in consideration of the forbearance to sue on a pre-existing debt, or in consideration of an extension of the day of payment, a new consideration thus intervening, of detriment to the creditor, the mortgagee will be protected as a *bona fide purchaser.*—2 Lead. Eq. Cases, 32, 84.

As to the debt due from Kelly, and the liability incurred by the acceptance of the bill of Jackson & Cline, Thames & Co. must be regarded as purchasers in good faith, without notice, so far as the mortgage executed by Kelly is concerned. The extension of the day of payment of the debt of Kelly, and incurring the liability of acceptors of the bill of Jackson & Cline, was the present, moving consideration of the mortgage. By it, they were induced to give a new credit to Kelly, and to incur the liability of accommodation acceptors for Jackson & Cline. They are, also, entitled to protection, so far as they had made advances to Kelly, and to Jackson & Cline, upon the agreements contemporaneous with the mortgage, before receiving notice of the fraud in the conveyance from Jackson to Kelly. That notice, it appears, came to them at some time in the summer of 1872 ; the precise date is not shown. If, subsequently, they continued advances, under their agreements, they are not entitled to protection for them. The notice precluded them from continuing the advances, as it would preclude a purchaser for money from

[Thames & Co. v. Rembert's Adm'r.]

continuing to pay the purchase-money after notice of the prior right or equity.

7. The conveyance from Kelly to Mrs. Jackson created in her a statutory separate estate, which she was incapable of incumbering by mortgage, as security for her own debt, or the debt of another. A mortgage given by her, for either purpose, is an absolute nullity. It does not resemble, or bear any analogy to the conveyance of an infant, or to a conveyance fraudulent as to creditors. It is a thing done against law, at the very time of doing it, and no person is bound by it. That principle is too firmly established by the former decisions of this court, to be now matter of discussion. *Bibb v. Pope,* 43 Ala. 90 ; *Wilkinson v. Cheatham,* 45 Ala. 337 ; *Weil v. Pope,* 53 Ala. 585 ; *Peebles v. Stalla,* 57 Ala. 53. The consequence is, by the mortgage executed by Jackson and wife, Thames & Co. acquired no title, legal or equitable, to the property it purported to convey. They knew of her coverture, and notice to them of the character of the estate created by the conveyance to Kelly must be presumed. A party claiming protection as a *bona fide* purchaser, must show an equity clothed with the legal title, acquired without notice of the prior equity, from which he claims protection. The mortgage being void, it neither creates an equity, nor transfers the legal title. The conveyance from Kelly to Mrs. Jackson is fraudulent and void as against the appellee and other creditors of her husband. It is not founded on any valuable consideration proceeding from her, but is merely a part of the scheme contrived by Jackson, in which Kelly participated, to defraud the creditors of the former.

8. It is true that, as between Jackson, Kelly, and the appellee, the execution issuing on the judgment in favor of the appellee operated a lien on all the property conveyed by Jackson to Kelly, and the conveyance was not an obstacle to the enforcement of the lien by levy and sale.—*Carter v. Castleberry,* 5 Ala. 277. As to the appellee, the conveyance was void, and a levy of execution against the grantor would have been an incipient legal step to its avoidance. The purchaser, at a sale under the execution, would have been a subsequent *bona fide* purchaser, as to whom the conveyance would have been void. But, Kelly having the legal title, the lien of the execution could not defeat or impair the title and equity of a *bona fide* purchaser from him, under a conveyance made before there was a levy. Whether, if there was a levy, the title and equity of such a purchaser would be affected by it, we do not consider, or intend to be understood as intimating any opinion. The lien of an execution does not vest in the judgment creditor either a *jus in re,* or a *jus ad rem.* It is simply

[Calhoun v. Fletcher.]

a right by law to charge the property of the judgment debtor which is subject to levy and sale, with the payment of the debt; operating as an incumbrance on it, of which all who subsequently deal with him must at their peril take notice. It is not unreasonable to compel them to take notice, as they are compelled to take notice of prior registered conveyances. An examination of the public records, in either case, will lead them to notice; and it is their own negligence, if they do not make it. Such an examination, in the present case, would have led to the ascertainment of the conveyance from Jackson to Kelly, disarming inquiry as to judgments or executions against Jackson, and directing it only as to judgments or executions against Kelly. When the principle is admitted, that a *bona fide* purchaser from a fraudulent grantee is entitled to protection against the demands of the creditors of the fraudulent grantor, it follows necessarily, that if the purchase is made before the creditors acquire a specific lien upon the property purchased, the protection must be extended, though there may be the general lien of an execution.— *Williams v. Lowe*, 4 Humph. 62; *Ledyard v. Butler*, 9 Paige, 132; *Young v. Lathrop*, 67 N. C. 63; Freeman on Executions, § 140; Bump on Fraud. Conv. 481.

The decree of the chancellor must be reversed, and the cause remanded, for further proceedings in conformity to this opinion.