# Danner Land and Lumber Co. *v.* Stonewall Insurance Co.

*Bill in Equity by Creditors, assailing Absolute Conveyance as Fraudulent, because intended only as Mortgage.*

1. *When absolute conveyance will be declared mortgage, and therefore fraudulent as against creditors.*—A conveyance which, though absolute on its face, was intended to operate only as a mortgage, or security for a debt, is fraudulent and void as against the creditors of the grantor; but it will not be so declared at their instance, unless the evidence is clear and convincing, since the law never strives to force conclusions of fraud.

2. *Answer, as evidence against co-defendant.*—The unsworn answer of one defendant is not admissible as evidence against another; and admissions contained in the answer of the grantee, that the conveyance was intended only as a mortgage to secure the repayment of borrowed money, can not be received as evidence against the grantor, or a subsequent assignee for the benefit of creditors, when the conveyance is assailed for fraud, on the ground that it was intended only as a mortgage.

3. *Admissions or declarations of agent; when admissible as evidence against principal.*—The admissions and declarations of an agent are not binding on his principal, nor competent evidence against his principal, unless made within the scope of his authority, and while in the discharge of his duties in and about the particular transaction of which they constitute a part of the *res gestæ;* and this principle applies equally to the agent of a corporation and of a natural person.

4. *Absolute conveyance, with subsequent agreement for re-purchase; retention of possession by vendor, as badge of fraud; agreement not to record deed.*—A conveyance which is absolute on its face will not be declared a mortgage, and therefore fraudulent as against creditors, because it is shown that, a·few days after the consummation of the transaction, the parties entered into a new contract in writing, by which the purchaser gave the vendor a right to re-purchase the property at the same price; nor will the transaction be held fraudulent, because the vendor remained in possession after the sale, when it is shown that this was under an agreement to pay rent; nor because the grantee agreed to withhold the deed from record, for fear of injuring the credit of the grantor, but nevertheless did record it by advice of his attorney.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 4th of November, 1884, by the *Stonewall Insurance Company,* a domestic corporation, and other creditors of the *Danner Land and Lumber Com-*

*pany*, another domestic corporation doing business in and near the city of Mobile; against the said Land and Lumber Company, the Mobile and Ohio Railroad Company, Wm. B. Duncan, G. Jordan, A. C. Danner, and J. C. Strong; and sought to set aside a conveyance executed by said Danner Land and Lumber Company to Jordan, on the ground that, though absolute on its face, it was intended merely as a mortgage to secure the repayment of $20,000 borrowed by said company from Jordan as the agent of the railroad company or Duncan, or as a conditional sale with a reservation of the right to re-purchase; and to have the property subjected by sale, under the decree of the court, to the satisfaction of the complainants' several debts. Danner was the president and active manager of said corporation, and Strong, who had been its secretary, was made trustee in an assignment which had been executed for the benefit of its creditors after the execution of the conveyance to Jordan, and which conveyed the company's interest in the same property.

The conveyance to Jordan, a copy of which was made an exhibit to the bill, was dated August 4th, 1884, and recited the present payment of $20,000 as its consideration : and the property conveyed by it, known as the "Venetia Mill Property," contained about two thousand acres of land, with its appurtenances. On the 8th August, 1884, said Danner Land and Lumber Company also executed to A. S. Gaines, as trustee, a deed conveying a large quantity of lumber, logs, &c., then lying at or near the wharves in Mobile, and loaded on vessels for foreign export, valued at over $20,000; in trust for the payment of four promissory notes held by Jordan, of $5,000 each, payable three, four, five, and six months after date; which notes, it appeared, were given by said company to Jordan on an agreement for the re-purchase of the same property; and he gave them his bond, also dated August 8th, 1884, conditioned to make titles to the property on the payment of these notes at maturity. A copy of the deed to Gaines was made an exhibit to the bill, and it was charged that this deed and the conveyance to Jordan were parts of one and the same transaction. The bill alleged, also, that said corporation was greatly embarrassed in July, 1884, and ceased to do business in October afterwards; executing to said Strong, as trustee, an assignment for the benefit of its creditors, a copy of which was made an exhibit to the bill.

An answer to the bill was filed by the M. & O. Railroad Company, denying all knowledge of the various transactions, and disclaiming all interest. An answer was filed by Duncan, admitting that the conveyance to Jordan was intended only as a mortgage to secure the re-payment of $20,000, which he had

lent to said company through Jordan as his agent; denying all fraud, and insisting that the money so lent had been used for the benefit of the creditors in paying off the liabilities of the corporation; and he claimed that a balance of nearly $3,000 was still due to him, after crediting his debt with the proceeds of all the lumber sold. Jordan died, without having answered; and the cause having been revived against his widow, as executrix and sole devisee, she filed an answer, admitting that the transaction was only a loan of money made by her husband, as agent for said Duncan, to said corporation, and that the conveyances were only intended to secure the repayment of this borrowed money. Danner also filed an answer, denying that the conveyance to Jordan was intended as a mortgage, or that the transaction originated in a loan; alleged that Jordan proposed to purchase the property absolutely for $20,000, and that his proposal having been submitted to the corporation, and by it accepted, the transaction was completed by the execution of the conveyance and the payment of the money, as therein recited; that he did not know at the time for whom Jordan was acting, but supposed he was acting for Duncan; that he believed at the time that Jordan and his principal did not want the property, but were only acting for the interest of the corporation, and would give the corporation an opportunity to re-purchase the property, and he so informed the directors; and that the agreement for the re-purchase, evidenced by the notes to Jordan, the deed of trust to Gaines, and Jordan's bond for title, was an entirely distinct transaction, entered into at his suggestion, and accepted by Jordan, on the day the papers bore date. An answer was filed by Strong, the assignee in the deed of trust, denying that the conveyance to Jordan was intended as a mortgage, or originated in a loan; asserting that Danner, as president of the company, had no authority to borrow money for it, or to mortgage the property; and insisting on the validity of the several conveyances, and his rights under the deed of assignment.

The complainants took the depositions of several persons, citizens of Mobile, who testified to conversations had by them with said Danner, a few days after the execution of the conveyance to Jordan, which was brought about by a publication, in the Mobile newspapers, of the fact that such a conveyance had been executed, and in which Danner stated, in substance, that the transaction was only a temporary loan, and that he would be able to redeem the property within six months; and he complained of the publication as a breach of Jordan's promise not to record the conveyance, but afterwards said, in other conversations, that Jordan said he had acted under the advice of his attorney. At the time of filing cross-interroga-

tories, Strong and the corporation, his·assignor, each objected to the interrogatories calling for these statements of Danner. The complainants also took the deposition of said Danner, but they did not offer it in evidence on the hearing, and it was read as evidence on the part of Strong. In said deposition, Danner gave the same account of the several transactions as in his answer, but with a fuller and more particular statement of the details.

At the hearing, as the "note of evidence" shows, the cause was submitted by the complainants, on the original bill and exhibits, the answers of Duncan and Mrs. Jordan, and all the depositions they had taken except Danner's; and on the part of Strong, on his own answer, the answer of said corporation, and the deposition of Danner. The chancellor held that the transaction with Jordan was a loan of money, and the conveyance to him an equitable mortgage only, which was fraudulent and void as against the complainants; and he therefore rendered a decree for the complainants, ordering the property to be sold by the register, and the proceeds to be distributed *pro rata* among the several complainants. From this decree Strong appeals, and here assigns it as error.

PILLANS, TORREY & HANAW, for appellant.

L. H. FAITH, *contra*.

SOMERVILLE, J.—The bill is filed by certain creditors of the Danner Land and Lumber Company, for the purpose of having declared fraudulent and void, as against them, a certain conveyance made by the defendant corporation to one Jordan, and bearing date the fourth of August, 1884. The conveyance is on its face a mere deed, absolute and unconditional. The effort of the complainants in the bill is to show that there was an understanding between the parties, at the time of its execution, that it should operate only as a mortgage given as a security for borrowed money, or else as in the nature of a conditional sale, by which the vendor orally reserved the right to re-purchase the property conveyed. It is insisted that this was such a secret reservation of an interest in the vendor as to vitiate the conveyance, because its effect was to hinder, delay, or defraud the creditors of the grantor.—*Sims v. Gaines*, 64 Ala. 392.

The rule is, that where a conveyance is on its face an absolute deed, it will not be declared a mortgage, or conditional sale—in contravention of its express terms—unless the evidence supporting this conclusion is clear and convincing.—*Turner v. Wilkinson*, 72 Ala. 361; *Parks v. Parks*, 66 Ala. 326. The rule is analogous to the principle, that a court of equity will

not decree the reformation of a written instrument on the ground of mistake, on parol evidence only, unless the mistake is plain, and is clearly established by full and satisfactory proof.—*Marsh v. Marsh*, 74 Ala. 418. The reason of the rule is unimpaired, where the result is to render the conveyance fraudulent, because the law never strives to force conclusions of fraud, and if the facts in evidence are fairly susceptible of an honest intent, that construction will be placed upon them.—*Crommelin v. McCauley*, 67 Ala. 542; *Thames v. Rembert*, 63 Ala. 561.

2. The unsworn answers of the defendants, Duncan and Mrs. Jordan, are clearly inadmissible against their co-defendants, Strong and the Danner Land and Lumber Company. We can not, therefore, look to any admissions contained in them, with the view of allowing these admissions any weight in considering the question in issue.—*Thames v. Rembert*, 63 Ala. 561; Adam's Eq. (7th Am. Ed.), 20.

3. The declarations of Danner, who was president and business manager of the Danner Land and Lumber Company, made to Davis and others, several days after the delivery of the deed in question, were inadmissible against either the company or the defendant Strong, its assignee, for the purpose of showing that the contracting parties intended such deed to operate either as a mortgage or a conditional sale. The declarations and admissions of any agent of a corporation stand clearly on the same footing with those of an agent of a natural person. "To bind the principal, they must be within the scope of the authority confided to the agent, and must accompany the act or contract which he is authorized to make."—Angell & Ames on Corp. (11 Ed.), § 309; *Marlett v. Levee & Cotton Press Co.*, 29 Am. Dec. 463. As said by this court, in *Smith v. Plank-Road Co.*, 30 Ala. 650, 667, "a corporation is not bound by the declarations of its officers, unless made when acting for it, and about the business which they are transacting for it." It certainly is not within the scope of an agent's authority to bind his principal by admissions and declarations having reference to by-gone transactions. Such declarations, to be admissible, must have been made while the agent was in the discharge of his duties as agent, and be so clearly connected with the main transaction, which is sought to be elucidated or explained by them, as to constitute a part of the *res gestœ* of such transaction.—*Ala. Gt. So. R. R. Co. v. Hawk*, 72 Ala. 112, 117; 1 Greenl. Ev. § 113; *Mateer v. Brown*, 52 Amer. Dec. 303.

These declarations of Danner were not made while in the discharge of his duties as agent of the company, duly authorized to execute the deed to Jordan. This transaction was completed, and the declarations were merely narrative of it; and for this reason they were inadmissible.

[Danner Land and Lumber Co. v. Stonewall Insurance Co.]

4. Discarding the admissions of Duncan and of Danner, we find no other decisive evidence in the record bearing on the question under consideration, except the deed itself, followed by an agreement on Jordan's part, entered into a few days afterwards, to sell the same property back to the vendor for the same price; and the testimony of Danner himself, in full explanation of the entire transaction. Danner shows that he had express authority from the board of directors of the company to sell and convey the land in question to Jordan, absolutely and unconditionally, and that this was done in pursuance of such authority. He had no authority to mortgage the land, or to contract for its re-purchase; and he testifies that he did not do so, expressly or by implication, at or before the time of the sale. He admits he had both the hope and the expectation of re-purchasing, but that no legal obligation rested on Jordan, who, it seems, was the mere agent of Duncan, to permit this; nor was there any understanding to this effect, until the new agreement was made on the eighth of August,—four days after the date of the deed of conveyance to Jordan. The evidence, in our judgment, decidedly preponderates in favor of this version of the transaction.

The retention of the premises by the vendor is sufficently explained by proof of an agreement to pay rent to the vendee. And the agreement of Jordan to withhold the deed from the record,—which seems not to have been carried out, upon his being informed by counsel of the hazard attending it,—was a mere badge of fraud, which is fully explained by a desire on his part not to injure the credit of the vendor. This agreement injured no one, because no one was induced to extend credit to the grantor on the faith of it.—Bump on Fraud Con. (3rd Ed.), 38–40. The complainants, who are creditors, can not, for this reason, make it the *gravamen* of any legal complaint.

The decree of the chancellor, adjudging the conveyance in question to be fraudulent and void as against the complainants, is not, in our opinion, supported by the evidence. The decree is, therefore, reversed, and a decree will be rendered in this court, dismissing the bill of the complainants, who will be taxed with the costs incurred in this court and in the court below.