# Parks *v.* Parks.

*Bill in Equity to have Absolute Deed declared Mortgage, and for Redemption and Account.*

1. *When absolute deed will be declared mortgage.*—To sustain a bill which seeks to have a deed, absolute on its face, declared a mortgage, the evidence must be clear and convincing. In this case, the deed being executed by an administrator to his co-administrator officially, and conveying a house and lot which the grantor had bought a few days previously, taking the title in his own name, it was declared a mortgage at the instance of his heirs and personal representative, on the ground that it was intended only to secure the repayment of funds of the estate used in paying the purchase-money, on proof that the grantor continued to reside in it, paid taxes on it, and erected permanent im-

[Parks v. Parks.]

provements; and that the grantee stated, to a person desiring to purchase, after the death of the grantor, "that he thought he had a mortgage on said premises, but, on examination of the papers, found that it was a deed which he held"; which statements were not denied or explained by the grantee, who was not examined as a witness for himself, and denied the allegations of the bill without oath.

2. *Purchase of lands by administrator, with trust funds; election by distributee.* When an administrator uses the funds of the estate in the purchase of lands, taking the title to himself, or takes from his co-administrator a conveyance of lands paid for with moneys belonging to the estate; in either case, the distributees of the estate may, at their election, either claim the lands, with rents, or hold him responsible for the money, with interest; and when the distributee is an infant, a court of equity may elect for him.

3. *Reversal of decree dismissing bill, where cross-bill is filed.*—Where the chancellor dismisses a bill on the final hearing, and also a cross-bill filed by an infant defendant, and an appeal is taken by the complainant; this court, on reversing the decree, can not re-instate the cross-bill, nor grant any relief upon it; but, if the reversal of the decree on the original bill makes it proper that the infant should have an opportunity to assert his rights, the cause will be remanded, in order that another cross-bill may be filed, if deemed necessary.

APPEAL from the Chancery Court of Jackson.

Heard before the Hon. H. C. SPEAKE.

The original bill in this case was filed on the 15th May, 1876, by the administrator and heirs at law of John W. Parks, deceased, against William D. Parks individually, and as administrator of the estate of Hugh L. Parks, deceased, and against Sallie Parks, an infant, as sole heir and distributee of the estate of said Hugh L. Parks; and sought to have a certain deed, absolute on its face, declared a mortgage, and for an account and redemption. The deed, a copy of which was made an exhibit to the bill, and which is without date, was executed by said John W. Parks and his wife, and acknowledged by them, before the judge of probate of said county, on the 10th September, 1869; and it purports to convey a lot in the town of Scottsboro in said county, in consideration of $600 in hand paid, to said W. D. Parks "as the administrator of the estate of Hugh L. Parks, deceased, his heirs, executors, and assigns." The lot described in said deed, and conveyed by it, was sold and conveyed to said John W. Parks by A. W. Brooks, by deed dated the 8th September, 1869, which was also made an exhibit to the bill, and which recites as its consideration the payment of $600 cash. Hugh L. Parks died in the spring of the year 1869, and letters of administration on his estate were granted by the Probate Court of said county, on the 9th June, 1869, to said W. D. and John W. Parks jointly; and they continued to act jointly as such administrators until the 9th August, 1873, when said John W. resigned; and he made a final settlement of his accounts on the 5th January, 1874, when a balance of $506 was found against him. John W. Parks died, intestate, in January, 1875,

[Parks v. Parks.]

and letters of administration on his estate were granted to his widow, Mrs. Margaret J. Parks, by whom the bill in this case was filed, jointly with their two children as his heirs at law.

The bill alleged that John W. Parks, in making payment of the purchase-money to Brooks, used the funds of the estate in his hands as administrator, and executed the deed to said W. D. Parks, his co-administrator, a few days afterwards, to secure and save him harmless on account of the moneys so used; that the deed was intended by both parties to operate only as a mortgage, and was delivered and accepted for this purpose only; that John W. Parks continued to occupy the premises, as his own residence, until he removed into the country in January, 1873; that he erected valuable and permanent improvements, and paid taxes on the property until his death; that when he removed into the country, he left W. D. Parks, who had resided with him, in the possession of the house and lot; that he fully accounted, on the final settlement of his accounts, for the $600 which he had used in paying for the property; that W. D. Parks verbally agreed to pay a stipulated rent for said house and lot, and another lot on which there was a store-house, in satisfaction of said balance of $506, and that said balance was thus paid and satisfied. The bill therefore prayed, that the deed be declared a mortgage only; that the necessary accounts be taken; and that the complainants be let in to redeem, on paying any balance found due, which they offered to do; and the general prayer, for other and further relief, was added.

Answers under oath being waived, W. D. Parks answered without oath, admitting that John W. Parks used the funds of the estate in paying for the house and lot, and that he conveyed said house and lot to him (respondent) on account of the moneys thus misappropriated. "But he denies," the answer continued, "that it was understood or agreed between the parties to said deed, at the time of its execution, that it should operate and have effect as a mortgage: on the contrary, it was understood to be an absolute and indefeasible conveyance, as the same purports. The deed was drafted by the said John W., who was then a lawyer, skilled in his profession; and the intention of all the parties is openly and fully expressed therein. He denies that, after the execution of said deed, the same was held and treated as a mortgage by him, though he is unable to state in what light it was considered by the other parties thereto; but it was never intimated to him, prior to the filing of the bill in this case, that they considered it as a mortgage." He admitted that said John W. continued to occupy the premises until he removed

[Parks v. Parks.]

to the country, in January, 1873, but denied that he claimed it as his own; denied that John W. paid the taxes on the property, and asserted that he paid the taxes himself as administrator; admitted that John W. erected improvements, but alleged that, by agreement between them when John W. removed, these improvements were to be taken in payment of the rent due from him to the estate. He stated, also, that he verbally promised, some time after the execution of said conveyance to him, to re-convey said house and lot to said John W., if he would refund to the estate said sum of $600 so used by him, with interest; but he denied that said money had ever been refunded, or in any way accounted for.

An answer was filed in the name of the infant defendant, Sallie Parks, by her guardian *ad litem*, which was prayed to be taken as a cross-bill; claiming that, on the facts stated in the bill, she had a right to elect whether she would take the house and lot, with the rents, or would hold the administrator liable for the $600, with interest; and asking that she be allowed to take the property, and to have an account of the rents and improvements, that they might be set off against each other.

On final hearing, on pleadings and proof, the chancellor held that, "under our decisions, the evidence is not strong, clear and convincing enough to authorize the court to declare the conveyance a mortgage"; and he therefore dismissed the bill, and also dismissed the cross-bill. The complainants appeal from this decree, and here assign it as error.

J. E. BROWN, and W. H. NORWOOD, for appellant.

R. C. HUNT, *contra.*

STONE, J.—The purpose of the present bill is to have a deed, absolute on its face, made by John W. Parks, September 10th, 1869, to William D. Parks, as administrator of Hugh L. Parks, declared a mortgage security for the payment of six hundred dollars and interest, moneys of the estate of said Hugh L., used by John W. Parks, then co-administrator of said Hugh L.'s estate, in the purchase of said house and lot; and the bill seeks to redeem said mortgage property. The chancellor dismissed the bill, on the merits; and the question for our decision is, whether the complainants have made out their case with that clearness of proof, which requires us to reverse the finding of the chancellor.—*Rather v. Young*, 56 Ala. 94; *Bryan v. Hendrix*, 57 Ala. 387.

To sustain a bill of this kind, the evidence must be clear and convincing—even strong and stringent, in the language

of some of the cases.—2 Brick. Dig. 271–2, §§ 316 to 320, inclusive. In considering the evidence in this cause, we attach no importance to casual or loose expressions by John W. Parks, made while occupying the lot, styling the premises " my house," " my premises," &c. Such remarks are frequently indulged, and properly indulged, by mere lessees, or tenants. They are but the equivalent of ' my residence'—the place where I reside—and properly convey no other idea. If this record contained only this evidence, we would regard it as wholly insufficient. But it does contain other evidence. The testimony of the witness Hargiss is, that " at the time I proposed to buy these premises from W. D. Parks, after John W.'s death, W. D. told me that he had thought that he had a mortgage on said premises, but, on examination of the papers, he found that it was a deed which he held to said premises." Again : " My best recollection is, that he told me he discovered he held a deed to said land, instead of a mortgage, on examination of his papers after John W. Parks' death." Now, the circumstances under which this conversation was held, were well calculated to impress them on the memory of the witness. It was held when Hargiss, the witness, was trying to negotiate a purchase of the lot. And this view of the case is strongly corroborated by the testimony of Judge Kyle, who shows, from the tax-assessments and tax-books in his possession, that, up to the death of John W. Parks, this property was given in for taxation, and taxes paid on it, in the name of John W. Parks, and not as of the estate of Hugh L. Parks. It is also corroborated, very strongly, by the testimony of Mrs. Margaret L. Parks, and by the character of repairs and improvements put on the property by John W. Parks ; improvements a mere tenant is not likely to make. And the defendant's only witness, Starnes, so far from weakening this testimony, tends himself to confirm it. Against this view, we find nothing but the unsworn denials in the answer of William D. Parks. He himself is not examined as a witness, although he could have testified in his own behalf to any facts known to him, except those growing out of transactions with, or statements by John W. Parks, deceased. Code of 1876, § 3058. He was competent to testify as to the alleged conversation between him and Hargiss. On this feature of the case made by this record, we think complainants should have had relief.

But there is another aspect of this case. Reaching the conclusion the chancellor did, there was nothing left for the cross-bill to operate on, and consequently he dismissed it. The result of his decree was, that the title to the property was in Wm. D. Parks, the administrator, with the privilege

[Parks v. Parks.]

and right of election in Sallie Parks, sole heir of Hugh L. Parks, to take the house and lot when she becomes twenty-one years of age, as being bought with her money, or to disavow the purchase, and claim the money; the former with rents, and the latter with interest. Our decision, announced above, changes the relations of the parties. The house and lot being purchased and paid for with the moneys of the estate of Hugh L. Parks—this being admitted in the bill, and also proven—a trust results in favor of the heir of the estate, to have the title of the property decreed to her, if she elect to claim it.—*Preston & Stetson v. McMillan*, 58 Ala. 84, and authorities cited; *Tilford v. Torrey*, 53 Ala. 120; *Kavanaugh v. Thompson*, 16 Ala. 817; Perry on Trusts, § 127. But the heir or distributee, being an infant, had not capacity to make the election; and hence the cross-bill was filed for the infant, to have the election made for her under the sanction of the court.—2 Story's Equity, §§ 1080 a, 1352–3,–6, 7. The cross-bill having been dismissed, and no appeal to this court from that decree, we have no power to reinstate it, or to grant any relief upon it. We would, therefore, being doing injustice to the infant, if we were to proceed to render a final decree, in the present state of the record. We will reverse and remand the cause, that the guardian *ad litem* of the infant may file another cross-bill, if so advised. Of course, if she has attained the age of twenty-one years, she can make her own election, without the sanction of the court; and no cross-bill would seem necessary, if W. D. Parks is in life, and is willing to convey to her. We do not wish to be understood as ordering or directing that the election be made for her, to take the house and lot. That may depend upon the condition of the estate, and the present condition of the property. The chancellor will have the means of informing himself correctly on these questions, and, in deciding them, will consult the interests of the infant. Let the costs of appeal be paid by William D. Parks.

Reversed and remanded.

BRICKELL, C. J. not sitting.