# Bass *v.* Bass.

*Bill in Equity to enforce Resulting or Constructive Trust in Lands.*

1. *Statute of limitations, and prescription, as against remainder-man.* The general rule is, that neither the statute of limitations, nor the prescription of twenty years, begins to run against a remainder-man, until he has a right to sue—that is, until the termination of the estate for life.

2. *Same; purchase of lands by administratrix, tenant for life, with funds of estate; remedies of remainder-men, and when barred.*—Where the testator had placed a small sum of money in the hands of a friend, to be used in entering a tract of public land, but the entry was not made; and after his death, his widow and administratrix, to whom he gave a life-estate in all his property, with remainder to his children, having collected the money so deposited, used it in purchasing a tract of land, taking the title in her own name; *held*, that the use of the money was

[Bass v. Bass.]

a conversion, for which the children as remainder-men might, at their election, charge her as for a *devastavit* on final settlement, or, ratifying the purchase as an investment for their benefit, might enforce a resulting or constructive trust in the land; and that their right of election, or of action, in either case, accrued at once, not awaiting the termination of the life-estate, and was barred after the lapse of twenty years.

3. *Presumption of settlement of administration from lapse of time.* After the lapse of twenty years from the grant of letters, no act of administration in the meantime being averred or proved, a settlement of the administration is conclusively presumed.

APPEAL from the Chancery Court of Jefferson.
Heard before the Hon. THOMAS COBBS.

WEBB & TILLMAN, for appellants.—(1.) The bill seeks to enforce a resulting trust, and to follow the proceeds of the sale of the land, to which the trust attached, in the hands of the bank with which it is deposited. The equity can not be doubted.—1 Story's Equity, §§ 422-3; 2 Story's Equity, §§ 1210, 1257; 1 Pomeroy's Equity, §§ 155, 1049; 2 Perry on Trusts, 814, 835; 10 Amer. & Eng. Ency. Law, 35, 39, 47; *Tilford v. Torrey*, 53 Ala. 120; *Crutcher v. Taylor*, 66 Ala. 217; *Walker v. Elledge*, 65 Ala. 51; *Lewis v. B. & L. Asso.*, 70 Ala. 276. (2.) In actions at law, the statute of limitations does not begin to run against remainder-men, until the termination of the life-estate.—7 Wait's A. & D. 268; 3 Washb. Real Property, 159; *Pickett v. Pope*, 74 Ala. 122; *Melvine v. Locke*, 17 Pick. 262; 31 N. J. Law, 21. Statutes of limitations are, with us, by express provision, made applicable to suits in equity.—Code, § 3419. The complainants here are remainder-men, and had no right of action during the life of their mother. They had a right to suppose that she was holding in subordination to the will, and she had the right of possession; nor was any act or claim, inconsistent with the trusts of the will, ever done or asserted by her, until the attempted sale and conveyance to her daughter in 1879. "Acquiescence, without full knowledge of the facts, can not affect the rights of any one ; and delay in instituting proceedings, where the parties are members of the same family, is not so strictly regarded, as where they are strangers to each other."—Story's Equity, § 1520 *d.* The complainants do not attack the validity of the purchase of the lands by the widow, nor claim adversely to it ; but, recognizing its validity, they claim that the land is by law charged with a trust in their favor, on account of the use of their funds in paying for it. Therein lies the distinction between this case and the Alabama cases cited for appellees.

[Bass v. Bass.]

Resulting or constructive trusts were enforced under similar circumstances, after great lapse of time, in the following cases: *Clayton v. Clayton,* 12 S. W. Rep. 312, Ky.; *Norris' Appeal,* 71 Penn. St. 124; *Henkle v. Floring,* 114 Ill. 554; *Smith v. Ramsay,* 1 Gilm. (Ill.) 373; *Snavely v. Pickle,* 29 Gratt. 41; *Harris v. McIntyre,* 118 Ill. 289.

TALIAFERRO, SMITHSON & VAUGHAN, *contra*, cited *Tilford v. Torrey,* 53 Ala. 122; *Nettles v. Nettles,* 67 Ala. 599; *Tarleton v. Goldthwaite,* 23 Ala. 343; *James v. James,* 55 Ala. 225; *Woodstock Iron Co. v. Fullenwider,* 87 Ala. 584; *Martin v. Br. Bank,* 31 Ala. 115; 7 Howard, 819; 2 Wallace, 87; *Scruggs v. Land Co.,* 86 Ala. 173; *McArthur v. Carrie,* 32 Ala. 75; *Johnson v. Johnson,* 5 Ala. 90.

STONE, C. J.—This case was decided on demurrer, which was an admission of the truth of the averments of fact, as found in the bill. We will treat them as facts.

Andrew Bass, a resident of Jefferson county, died August 19, 1854. He left a last will, which was duly probated and established—the time of the probate not positively stated. The language of the bill bearing on this subject is as follows: "That shortly after the death of said Andrew Bass, the said Jane Bass, widow, *etc.*, and your orator W. J. Bass, caused the will of said Andrew Bass to be probated, as hereinbefore stated, and letters testamentary, or of administration *cum testamento annexo,* to be issued to the said Jane Bass as administratrix, and the said W. J. Bass, as administrator of the estate of the said Andrew Bass, deceased, and duly qualified as such administratrix and administrator as aforesaid, and took upon themselves the joint administration of the estate." Testator left his widow, Jane Bass, and nine children surviving him, one of whom, George Bass, died without issue, never having married. The widow, Jane Bass, also died April 14, 1887, near thirty-three years after the death of Andrew Bass.

The following are extracts from Andrew Bass' will: "I give all my property belonging to me, both real and personal, to Jane Bass, my beloved wife, her life-time. . . . . It is my desire that, at the death of my wife Jane, that my property, both real and personal, be sold, and equally divided among my heirs," &c. The present suit was instituted March 26, 1889, by W. J. Bass and four others, children of Andrew Bass, against the remaining three children, of whom

[Bass v. Bass.]

Martha E. Bass is one. Its purpose and prayer are to have a resulting trust declared in certain lands, and in certain moneys, the proceeds of other lands. We will not enter into a discussion of the requisites of a resulting trust. The averments of the bill clearly bring this case within the rule, if it is not barred by lapse of time.—3 Brick. Dig. 785.

The following extracts set forth the *gravamen* of the present bill: "That a few days before the death of the said Andrew Bass, he . . . placed in the hands of one Willis Burns . . . the sum of fifty-two dollars and fifty cents, in lawful money, with which he directed the said Willis Burns to enter the north-west quarter of the south-west quarter of section five, in township seventeen, of range one west, in Jefferson county; but, by reason of some accident, or mistake, the said Burns failed to enter the said lands at the land-office in Tuskaloosa, Alabama, for the said Andrew Bass . . . but, at the death of said Andrew Bass, he, the said Burns, retained the said money in his hands. . . . That soon after the said Jane Bass had so qualified as the administratrix of her said husband's estate, she, the said Jane Bass, went to Tuskaloosa, and filed in the land-office of the United States, then located in the said city of Tuskaloosa, her application to enter, and did enter, in her own name, the following described lands, situated in said county of Jefferson . . . . to-wit: the south-east quarter of the north-east quarter of section (6), and the north-west quarter of the south-west quarter of section five (5), and the east half of the north-west quarter of section eight (8), all in township seventeen (17), of range one (1) west, in said county of Jefferson; that in order to make said entry, and for the purpose of paying for the said lands so entered, she, the said Jane Bass, obtained the said money which had been so deposited and left by the said Andrew Bass in the hands of the said Willis Burns; that the said lands above described, under the laws of the United States then in force, then known and commonly known as the 'Bit Law,' were subject to entry at twelve and a half cents per acre, and were entered at that price by the said Jane Bass in her own name; but the same were paid for out of the fifty-two 50–100 dollars, which she, the said Jane Bass, had obtained, or, at the time of the entry, did obtain from the said Willis Burns, and which your orators and oratrix aver was the identical money which had been left with said Burns by the said Andrew Bass for the purposes aforesaid." The bill then charges, that during the

[Bass v. Bass.]

life-time of said Jane Bass, she sold off fractional parts of said lands; and that about the 12th day of August, 1879, the said Jane Bass made a deed of gift of the residue of said lands to her daughter, Martha E. Bass, less the south-east quarter of the north-west quarter of said section eight (8); and that about —— day of March, 1889, the said Martha E. Bass sold the parts of said lands which are in sections five (5) and six (6), for the sum of seven thousand dollars cash. There was a demurrer to the bill on the ground of staleness, or lapse of time, which the chancellor sustained; and his decree is assigned as error.

The contention of complainants below, appellants here, is, that inasmuch as Jane Bass, the widow, had a life-estate under the will of Andrew Bass in all the estate he left, real and personal, with remainder to the children, she had, by force thereof, a life-estate in the money invested in the land, which gave her an equitable life-estate in the land itself; and the legal title being in her, they were not required to assert their claim, until, by her death, their right to present enjoyment accrued. It is certainly the general rule, that neither a statutory bar, nor prescription, runs against a remainder-man, until the termination of the estate of the life-tenant. There must be a right to sue, before the bar begins to run. 2 Brick. Dig. 220, § 35; Ib. 221, § 54; 3 Brick. Dig. 618, § 10.

The present case, however, rests on a different principle. When Andrew Bass died, the authority he had given Burns, to invest the money deposited with him in the purchase of the forty acres of land in section five (5), died with him. After that event, no one was lawfully authorized to carry out his wish.—1 Wait's Act. & Def. 290.

Mrs. Jane Bass, being personal representative of testator, was entitled to demand and receive the money from Burns; and when she received it, she held it in precisely the same right, as she held any other money belonging to the estate. It was money, and in that money thus held she was entitled to a life-estate, after the payment of debts and funeral expenses. Till these paramount claims were satisfied, she had no right to the money, save in her representative capacity. And, even after the debts and funeral expenses were paid, she had no absolute, personal right to the money, until its restoration to the remainder-men at her death was secured. We mean the principal of the money; for the interest was hers.—*Mason v. Pate*, 34 Ala. 379.

Putting the money in land, did not, *per se*, substitute the

land for the money, nor place its title where the will had placed the right to the money. It was a conversion, and, if nothing more was done, the administratrix rendered herself liable for it on settlement of her administration, as for a *devastavit.* The remainder-men alone could elect to claim the land, in lieu of the money; and until their election was declared, the land remained the property of Mrs. Bass, and she was liable for the *devastavit* in misapplying the money. *Parks v. Parks,* 66 Ala. 326; 3 Brick. Dig. 785, §§ 50, 51.

If it be contended that, because the remainder-men had no right to the actual possession until the death of Mrs. Bass, therefore they could not assert their election and right to take the land in lieu of the money, the answer must be, that they labored under no such disability. They had the clear right to hold her on her settlement liable for the money, as money converted; or, on a bill properly framed, to make their election to claim the land in lieu of the money, and either by the chancellor's decree, or by reformation of the deed, have their rights in remainder secured to them. Relief to this extent they were entitled to, at any time after Mrs. Bass invested the money in land, taking the title in her own name. Such relief is akin to a proceeding to perpetuate testimony.—*Bone v. Lansden,* 85 Ala. 562. Or, on her settlement, they could charge her with the money converted, which would be an election not to claim the land.

Giving a liberal interpretation to the expressions in the bill—"shortly after the death of said Andrew Bass," and "soon after the said Jane had so qualified as the administratrix—" a very long period, more than thirty years, elapsed between the entry of said land and the filing of this bill. During all that time, the legal *status* of the transaction was, a conversion of the money of the estate by Mrs. Bass, and a purchase of land by and for her. No one, save the remainder-men, had the right or power to change that *status,* and they could only do it by electing to claim the land in lieu of the money. The bill is silent as to any act of administration done by Mrs. Bass, save her appointment and qualification as administratrix. Whether she performed any acts of administration or not, or, if she did, whether any of them were performed within twenty years before the bill was filed, we are without any guide for determining. In the absence of averment, taking the case without the influence of the twenty years presumption, we must and do presume that Mrs. Bass settled her administration, and accounted for the

[Smith v. Greer.]

money converted by her. And in the absence of such aver-
ment, the presumption is conclusive that she did so.—*Aus-
tin v. Jordan,* 35 Ala. 642; 1 Brick. Dig. 807, § 65; 3 *Ib.*
409, §§ 48, 51.

We may add, that twenty years acquiescence, or non-
action, is a bar to the right to trace money into property in
which it has been invested, and thereby to fasten a trust in,
or lien upon it.

Affirmed.