# Gindrat *v.* Western Railway of Alabama.

*Statutory Action in Nature of Ejectment.*

1. *Died in trust; adverse possession, as against contingent remainder-man.*—In the year 1845, land was conveyed to a trustee for the use of S. for life, and after her death to be held for the use of her three children, A., M., and W., during their lives, and at their death to vest

absolutely in their children. A. survived S. and the trustee. After A's death, his children brought a statutory action in the nature of ejectment for their portion of the land, and the defendant claimed it by adverse possession during the lives of the first and second life-tenants. *Held*, that if, at the date of the execution of the deed in trust, the second life-tenants had no children in being, the remainders over in fee were contingent remainders, and while they remained contingent, the trustee represented the contingent remaindermen, for the preservation of the remainders, and adverse possession against him for ten years before the happening of the contingency upon which the remainders were to vest barred the right of entry of the contingent remaindermen ; but the remainder in fee vested upon the birth of a child to the second life-tenant, and, as against such vested remaindermen, there could be no adverse possession during the continuance of the preceding life estate. *Held*, further, that the burden is on the defendant, to support its claim by adverse possession, to show that when the deed was executed the remainder over in fee was contingent for want of children of the second life tenants, and so remained until defendant became entitled to the land by adverse possession as against the trustee.

2. *Contingent remainders; vesting and failure of.*—Land was conveyed to a trustee to be held for the use of S. during life, and after her death for her three children, A., M., and W., for and during the term of their natural lives, and at their death to vest in the children of said A., M., and W., "that may be living at the time of their deaths." W. died before S., leaving no children. *Held*, that upon the death of each of the second life-tenants, their children, respectively, took the fee of a one-third undivided interest in the land, and that W., having died during the life-time of S., his interest reverted to the grantor.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JOHN P. HUBBARD.

W. S. THORINGTON, and JOHN GINDRAT WINTER, for appellants, cited, *Farley v. Gilmer*, 12 Ala. 141; *Dunn v. Davis*, 12 Ala. 135; *Woody v. Findlay*, 9 Ala. 716; *Schaffer v. Lavretta*, 57 Ala. 14; *Bercy v. Lavretta*, 63 Ala. 374; *Pickett v. Pope*, 74 Ala. 122; *McCorry v. King*, 39 Am. Dec. 165; *Bass v. Bass*, 88 Ala. 408; *Woodstock Iron Co. Fullenwider*, 87 Ala. 584; *McArthur v. Carrie*, 42 Ala. 95; *Gosson v. Ladd*, 77 Ala. 223; *Bank v. Ballard*, 83 Ky. 481; *McArthur v. Scott*, 113 U. S. 340; 1 Jarm. on Wills, 751, 727; Tiedeman on Real Property, § 715.

SEMPLE & GUNTER, *contra*, cited, *McArthur v. Carrie*, 32 Ala. 88 *Hefflin v. Harrison*, 54 Ala. 552; *Garrett v. Garrett*, 69 Ala. 429; *Matthews v. McDade*, 72 Ala. 377; *Gosson v. Ladd*, 77 Ala. 223; *Moulton v. Henderson*, 72 Ala. 433; *Connell v. Cole*, 89 Ala. 381.

McCLELLAN, J.—This is an action of ejectment by the appellants against the appellee. The general affirmative

charge was requested by both parties in the court below, re-
fused to the plaintiffs, and given for defendant. The facts,
as they appear from a deed put in evidence on the trial, and
from an agreed statement, which, in connection with said
deed, constituted the whole evidence adduced, may be sum-
marized, as follows: On July 17, 1845, John Nickel con-
veyed the land in controversy, together with several other
lots, to John H. Gindrat, "to have and to hold unto him-
self, his heirs and assigns forever, in special trust and con-
fidence nevertheless"—the deed proceeds—"for the sole and
separate use, benefit and behoof of Sarah E. Gindrat, during
the term of her natural life, and at her death, said pre-
mises shall still be held in trust for her three children,
to-wit: Abraham Gindrat, Mary Elizabeth Winter, and
William B. Gindrat, for and during the term of their
natural lives, and at their death the same shall vest in
the heirs at law, or children, of them, the said Abraham,
Mary Elizabeth and William B., that may be living at the
time of their deaths; provided always, and it is expressly
provided and agreed by and between the parties, that the
said trustee may, at any time, with the advice and consent
of John Gindrat, the father of the said Abraham, Mary
Elizabeth and William B., sell and dispose of any or all
of said lots for cash, or upon credit, as they may think
proper; and it is further agreed and stipulated by and
between the parties, that should John Gindrat die leaving
any of such trust property undisposed of in the hands of
said trustee, then it shall be necessary for said trustee, be-
fore disposing of any portion of said trust property, to
obtain the assent in writing of said *cestui que trust* to that
effect."

Of the grantees and beneficiaries mentioned in said deed,
Sarah L. was the wife of John Gindrat; John H. Gindrat,
the trustee, was their son, as were also Abraham, and William
B., and Mary E. was their daughter. John died in 1851;
Sarah L. in 1854; William B. in 1852, leaving no children;
Abraham in 1884, leaving children, who are the plaintiffs
in this action; and John H. Gindrat, the trustee, died in
1874.

In July, 1845, after the execution and record of said
deed, the Montgomery & West Point Railroad Company,
entered upon said property, "and inclosed and occupied the
same, claiming it as its own, and was in the open, notorious
and exclusive possession of the same as its own, until it
sold and conveyed it to certain trustees some time in 1856,
by whom it was sold and conveyed to the defendant;" and

the land has all the time, since the entry of the M. & W.
P. R. R. Co. upon it in 1845, and down to the commence-
ment of this suit, been in the open, notorious and exclu-
sive possession, under claim of ownership, of said company,
and its assigns, including the defendant company, now in
possession; and "was at the time of said entry uninclosed,
and not in the visible possession of any one."

The deed of trust involved here was considered by this
court in the case of *Gindrat v. Montgomery Gas Light Co.*
82 Ala. 596; and it was there determined that, after the death
of John Gindrat, the power of sale lodged in the trustee,
John H. Gindrat, could be executed only with the assent
in writing of Sarah L. Gindrat, who alone was considered
to be the *cestui que trust*, within the last clause of the deed.
It results from this construction, that after the death of
Sarah L. Gindrat, which, as we have seen, occurred in 1854,
the trustee had no power to sell the property at all. There
is no evidence of the execution of the power of sale in the
life-time of John Gindrat, who died in 1851, nor of its exe-
cution after his death during the life-time of Sarah L. Gind-
rat, nor in fact of any conveyance of title at any time into
the defendant, or those under whom it now claims by suc-
cession to such rights as the adverse possession of its pre-
decessors conferred upon them. It is not pretended, of
course, that this adverse possession, beginning, as it did, in
the latter part of July, 1845, was of sufficient duration prior
to the death of Sarah L. to have ripened into title upon
which this action could be defended. The title, so far as
appears in this record, was in the trustee up to the death
of Sarah L. Gindrat. Whether it continued in him there-
after, depends upon the character of the remainder over in
fee, supported by the second estate or estates for life in
Abraham, Wm. B. and Mary Elizabeth. If the remainder
to such of their children as should be living at the time of
their death, was a vested remainder, the trustee had no
further duties to perform under the instrument. He had
no power of sale after the death of Sarah L., as we have
said. He had nothing to do with respect to the life-estates
based on the falling in of her estate. He was charged with
no duties with respect to the remainders over in fee, since
they, on the assumption upon which we are now proceeding,
were vested estates, which could not be destroyed, and which
therefore did not require or admit of his protection. Under
the statute of uses, which is a part of the common law of
this State, and re-affirmed by our own statutory provisions—
Code, §§ 1831-2—the trust estate determined, under this as-

sumption and these facts, at the death of Sarah L. Gindrat, and both the legal and beneficial title and estate then vested in the second life-tenants and the tenants in final remainder, free from all interference and representation by the trustee. *Horton v. Slede,* 29 Ala. 478; *Schaffer v. Lavretta,* 57 Ala. 14; *Bercy v. Lavretta,* 63 Ala. 374; *You v. Flinn,* 34 Ala. 409; *Tindal v. Drake,* 51 Ala. 574; *McBrayer v. Cariker,* 64 Ala. 50; *Gosson v. Ladd,* 77 Ala. 223; *Webb v. Crawford,* 77 Ala. 440.

Here, then, would be simply a life-estate in Abraham Gindrat, say, with remainder over in fee vested in the present plaintiffs. There is no privity between the tenant for life and the remaindermen. He does not, and did not, represent them in any wise, or to any extent. No affirmative act of his could cut off their rights, or divest their estates. *A fortiori,* no omission of action on his part, no *laches* of which he may have been guilty as to defendant's possession of the land, no acquiescence in such possession, could at all affect the estate which they were entitled to come into enjoyment of at his death. The possession of the defendant during his life, however long, notorious, open, adverse, and under claim of right against all the world, could not ripen into title, or afford a predicate for the presumption of a grant under the doctrine of prescription, as against these plaintiffs. At no time during the life-estate could they, or any one of them, have questioned this possession, and no *laches* in submitting to what they were without remedy to resist, can be imputed to them. It is not shown that defendant, or its predecessors, ever had a deed or color of title, and the predicate for the application of the doctrine laid down in *Woodstock Iron Co. v. Fullenwider,* 87 Ala. 584, is, therefore, wholly lacking. The case is, in other words, the familiar one of a possession, adverse and of long continuance pending a life-estate, being relied on to defeat ejectment by the remainderman brought within ten years after he became entitled to the possession; and the authorities are uniform to the point, that such possession is no bar to the action.—Tiedeman on Real Property, § 175; 1 Amer. & Eng. Encyc. of Law, 327; *Fleming v. Burnham,* 100 N. Y. 1; *Jones v. Freed,* 42 Ark. 351; *McCarry v. King's Heirs,* 39 Amer. Dec. 165: *Pickett v. Pope,* 74 Ala. 122; *Bass v. Bass,* 88 Ala. 408; *Allen v. DeGrooett,* 98 Mo. 159; s. c., 14 Amer. St. Rep. 626, *notes* 632–5.

If, however, the remainder over in fee was contingent, the doctrine stated above would have no application, at least so long as the contingency continued. In such case, the trustee would have active duties to perform in the protection of the contingent remainder, and would hold the legal title in

trust for the remaindermen, and to become vested in them
as they come into being. The trustee is thus the repre-
sentative of the tenants in remainder. There is a privity
between them and him. In the protection of their contin-
gent interest he may interpose during the life-estate, if need
be, and to any extent necessary to that end. He has a right
of entry in case of any wrongful alienation by the tenant for
life, or whenever his estate for life determines in his life-
time by any other means than alienation. And being thus
in privity with the remaindermen, and representing them
for the preservation of the remainder, until the happening
of the condition upon which it is to vest, his *laches* is the
*laches* of the tenants in remainder; acquiescence by him binds
them, and adverse possession against him bars their right
of entry. In the case at bar, the possession of the defend-
ant, and those under whom it claimed, was such a destruc-
tion of the life-estate while the tenant of that estate was
still alive, as entitled the trustee to enter for the preserva-
tion of the contingent remainders, which otherwise would be
also destroyed by reason of the intervening estates not con-
tinuing up to the time they were to vest; and he, having a
right of action, is barred of its assertion after the lapse of
ten years from the inception of defendant's possession in the
latter part of July, 1845. Moreover, since the trustee for
the preservation of contingent remainders has large powers
to be exercised, ordinarily, subject to the control of the Chan-
cery Court, and may even join, or be compelled in equity
to join, in a sale to destroy the contingent remainder, if it
should appear that such course would best answer the trusts
declared; the presumption of such sale will, after the lapse
of twenty years beneficial possession in another, be indulg-
ed, not only against the trustee, but also against the *cestui
que trust.* In the language of Chancellor Kent: "The le-
gal estate limited to trustees during the tenant's life, is a
vested remainder in trust existing between the beneficial
freehold and the contingent remainder, and the limitation in
trust is not executed by the statute of uses [as we have seen
is the case with remainders which are vested not in trust,
but in the tenants in remainder], and the legal estate in such
cases remains in the trustees. The tenant for life has a le-
gal estate, and the remainder, of the same character, and for
the same period, is vested in the trustees; and if the particu-
lar estate determines otherwise than by the death of the ten-
ant, the estate of the trustees *co instanti* takes effect. and,—
as a particular estate in possession, it supports the remain-
der, dependent on the contingency."—4 Kent. Com. 253,
256–7.

The statute now of force in this State abolishes contingent remainders, and provides that all estates which would be such at common law shall have the same properties and effect as executory devises.—Code, § 1826. Had this been the law, when the conveyance here involved was executed, its effect would have been to determine the trusteeship on the death of Sarah L. Gindrat, since the trustee could have had no duties to perform with respect to an executory devise; but the provision in question is new to the Code of 1852, and has no operation upon contingent remainders theretofore created.

Whether the remainder to the children of Abraham Gindrat was vested or contingent when created, and if a contingent, how long it continued to be so, are questions which this record affords no *data* for determining. If it was a vested remainder, as we have seen, the defense of adverse possession will not avail, and the general charge for the defendant, given by the trial court, was erroneous. If, on the other hand, it was contingent, and so continued for ten years after the inception of the adverse possession upon which defendant relies, the rights of these plaintiffs were destroyed by the *laches* of their trustee, whose duty it was to preserve the estate limited over to them; and they would fail in this action on the well established doctrine of *Molton v. Henderson*, 72 Ala. 426. But the plaintiffs having made a *prima facie* case for recovery by proof of their successorship to the legal title as evidenced by muniments, the *onus* was cast upon the defendant, relying, as it did, solely on adverse possession, to show such possession against these plaintiffs; and this could only be done by proof that the remainder over was a contingent one in its inception, and so continued for at least ten years, pending the possession of defendant, or those under whom it now claims. This burden it has failed to discharge. The defense relied on is, therefore, unsupported by proof, and in any aspect of the case as it was presented in the court below, the general charge requested for defendant, should have been refused.

Whether the general charge requested for the plaintiffs should have been given, depends on the construction of the deed of trust as to the character and *quantum* of the life interests of the second life-tenants, and of the tenants in final remainder; and as to when, or upon what event, the remainder-men in fee became entitled to their estates in possession.

The deed involved here is not very clear in all of its terms. It is entirely safe to say, however, that Abraham Gindrat,

[Gindrat v. Western Railway of Alabama.]

William B. Gindrat and Mary Elizabeth Winter took vested remainders for life, subject to devestiture by the execution of the power of sale by the trustee prior to the death of Mrs. Gindrat. It is equally clear, we think, that by the force of our statute against survivorship among joint tenants, if not otherwise, they took as tenants in common for all practical purposes; and each became entitled to an one-third undivided interest in remainder in severalty. The terms of the instrument as to the remainder over in fee are. "And at their [Abraham, Mary Elizabeth and William B.] death, the same shall vest in the heirs at law, or children, of them, the said Abraham, Mary Elizabeth and William B., that may be living at the time of their death." The words "heirs at law, or children," as here employed, manifestly mean children only.—*Flint v. Steadman*, 36 Vt. 210. It may not be very clear upon the face of the paper, looking alone to the words of limitation over, whether the purpose to have the remainder take effect in possession only after the death of all the second life-tenants, or to have the children of each take a vested estate in possession in an one-third undivided interest, upon the death of their ancestor. It would seem, however, to follow from the several character of the precedent life-tenants, that the latter is the more reasonable, if not a necessary conclusion; and it is reinforced by the consideration, that the manifest purpose of the deed was to provide for the support of Mrs. Sarah L. Gindrat, then of three of her children for life, and finally of her grand-children, a purpose which could best be subserved,—if indeed it could be subserved at all otherwise—by vesting the estate in the grand-children immediately upon the death of their respective parents, who, it is to be supposed, would be theretofor supported by the ancestor out of the usufruct of one-third of the property for life. It may readily be conceived that the children of Abraham, for instance, who died in 1884, would not enjoy the benefits intended to be conferred upon them by the conveyance—that the intention of the grantor as to them would not be effectuated—if it should be held that they are denied all participation in the property from the death of their father till the death of Mrs. Winter, who still survives; and we, therefore, feel that we are conserving the real intent and purposes of the grantor, as well as effectuating the necessary results of the several character of the ownership of the second life-tenants, in holding that, upon the death of each one of the life-tenants, their children respectively became entitled to the absolute fee, and with the fee, of course, the possession, of an one-third undivided

interest in the property. Were the contrary construction adopted, and it were held that the remainder in fee took effect in possession only after the deaths of all the second life-tenants this action could not be maintained at all, of course, until the death of Mrs. Winter. The position of counsel, that an action under that interpretation would not lie, because the remainder is a vested estate, is quite untenable.

A further result of these considerations is, that William B. Gindrat having died before the falling in of the first life-estate, and having no children, never having married, his vested remainder for life lapsed before it took effect in possession; the remainder over in fee failed, because there were no children of his to take; and the whole title to the one-third interest limited to him and his children, reverted, upon the subsequent death of Sarah L. Gindrat, to the grantor in the deed of trust.

The present plaintiffs can, therefore, in no event, recover more than the one-third undivided interest in the lands in which their father, Abraham Gindrat, had an estate for life. Whether they may recover even to this extent, depends, as we have seen, upon the character of the remainder over to them. If Abraham Gindrat had a child in esse on July 17th, 1845, the remainder to his children at once vested in such child, and thereafter opened and let in after-born children, as they came into being. This, on the familiar principle, that the uncertainty which prevents the vesting of a remainder must have reference to the present right of future enjoyment, and not to the enjoyment itself; or, in other words, if, when the final remainder was created, there was a person in esse entitled to take in possession immediately, upon the termination of the precedent life-estate, the remainder became at once a vested estate in him, however great should be the uncertainty as to whether he would in fact ever come into the possession and enjoyment of the estate; for, as declared by Chancellor Kent, "It is the present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder."—4 Kent's Com. *203; Stonebraker v. Tallickoffer, 52 Md. 154; In re Lechmore, 18 Ch. D. 524; Kumpe v. Coons, 63 Ala. 448; Howard v. Peavy, 128 Ill. 430; s. c., 15 Amer. St. Rep. 121, note 528; Bufford v. Holliman, 10 Texas, 560; s. c., 60 Amer. Dec. 223; Manderson v. Lukens, 23 Penn. St. 31; s. c., 62 Amer. Dec. 312; Cathey v. Cathey, 470; s. c., 49 Amer. Dec. 715; Bruce v. Bissell, 119 Ind. 525;

s. c., 14 Amer. St. Rep. 436, *note* 442. So that it is not important that a child of Abraham, in life at the time of the execution of this deed, might not be living at the death of the life-tenant, and hence might never take in possession. Whether such child survives or not, it then had the right to possession, had the possession become vacant, and the element of uncertainty involved in the probability of death before the possession does become vacant, goes to the future enjoyment, and not the present right of future enjoyment.

But, if no child of Abraham was in being when the deed was executed, the remainder over in fee was a contingent remainder of the fourth class under the classification adopted by Mr. Fearne, which embraces all cases where the person to whom the remainder is limited is not ascertained, or not in being.—4 Kent's Com. *208. And if this be the fact here, the trusteeship continued so long as the contigent character of the remainder was maintained; and so long as the trust continued, the possession of the defendant was adverse to both the trustee and the *cestui que trusts*. If this possession continued for ten years under the statute, or twenty years under the rule of prescription, while the unborn children of Abraham Gindrat were represented by John H. Gindrat, the trustee, their rights were forever cut off. But the policy of the law is favorable to the vesting of estates. Remainders are held to be vested, rather than contingent; and though originally confessedly contingent, are held to vest as soon as any person having the capacity to take possession immediately upon a vacancy in precedent possession, is ascertained, or comes into being. Conceding that this remainder was contingent in its inception, requiring a trustee to its preservation, it ceased to be contingent, and became a vested estate, not requiring the protection of a trustee, immediately upon the birth of a child to Abraham Gindrat.—4 Kent's Com. *205; *Mercantile Bank v. Ballard*, 83 Ky. 481; s. c., 4 Amer. St. Rep. 160.

And it follows that the defendant's adverse possession against the trustee, and through him against the *cestui que trust*, would not avail in defense of this action, if the remainder became a vested one by the destruction of the contingency, resulting from the fact that no person with capacity in possession was in being, before the lapse of sufficient time to raise up the bar of the statute, or put in operation the doctrine of prescription. The birth of a person in whom the estate could vest terminates the trusteeship, and if the title has not then been vested by the lapse of time in the adverse holder, it can not afterwards become so, pending the life-

[Pollock v. Meyer.]

estate, since the tenant in remainder has no right of entry, no standing in court, to question the possession, and his submission thereto is not *laches*, which work a devestiture of his estate.

These considerations lead to the conclusion, that the plaintiffs will be entitled to recover an one-third undivided interest in the land described in the complaint, and no more, unless the defendant shows possession for ten years or more (that is, if it again relies solely on possession) while the remainder to the children of Abraham Gindrat was contingent; and that the general charge requested by the plaintiffs, which would have authorized a recovery of the whole land, was properly refused.

For the error involved in giving the general charge for the defendant, the judgment is reversed, and the cause remanded.

Reversed and remanded.

The foregoing opinion was delivered January 14, 1891. The appellee applied for a rehearing. This application was overruled July 27, 1892. THORINGTON, J., not sitting.